Mark BERRY, Eric Berry and Brooke Berry, Minors, By and Through their guardian, ad litem, Lorna J. BERRY, and Lorna J. Berry, individually, Plaintiffs and Appellants,

v.

BEECH AIRCRAFT CORP., a corporation, Hercules Flyers Inc., a Utah nonprofit corporation, the estate of Halbert E. Root, and John Does I–V, Defendants and Respondents.

No. 17694.

Supreme Court of Utah.

Dec. 31, 1985.

James R. Soper, Salt Lake City, for plaintiffs and appellants.

Colin P. King, Salt Lake City, Richard B. Johnson, Provo, for amicus curiae.

David K. Watkiss, Dave B. Watkiss, Michael T. Heyrend, Tracey H. Fowler, Salt Lake City, for defendants and respondents.

STEWART, Justice:

Lorna J. Berry filed this wrongful death action on behalf of herself and her children for the death of her husband and the father of her children, Alan Berry, who died in an airplane crash. The defendant, Beech Aircraft Corporation, was the manufacturer of the airplane; the defendant, Hercules Flyers, Inc., owned the airplane at the time of the crash; and one of its employees was the pilot of the plane. The action charges Beech with negligence, strict liability, and breach of warranty. The trial court awarded Beech summary judgment on all theories of liability on the ground that section 3 of the Utah Product Liability Act ("Act"), U.C.A., 1953, § 78–15–1, *et seq.*, barred all actions against Beech. Section 3 of the Act, commonly called a statute of repose, provides:

> (3) No action shall be brought for the recovery of damages for personal injury,

death or damage to property more than six years after the date of initial purchase for use or consumption, or ten years after the date of manufacture of a product, where that action is based upon or arises out of, any of the following:

(a) Breach of any implied warranties;

(b) Defects in design, inspection, testing or manufacture;

(c) Failure to warn;

(d) Failure to properly instruct in the use of the product; or

(e) Any other alleged defect or failure of whatsoever kind or nature in relation to a product.

On this appeal, the plaintiffs contend that section 3 is unconstitutional because it violates the following provisions of the Utah Constitution: the Open Courts Clause of Article I, section 11; the Due Process Clause of Article I, section 7; the Equal Protection Provision of Article I, section 24; and the prohibition against abrogation of wrongful death actions in Article XVI, section 5.

The action against Beech Aircraft is based on its having manufactured the airplane which crashed. The plane was some twenty-three years old at the time of the crash and had been owned by Hercules Flyers for approximately nine years. On its face, therefore, section 78–15–3 purports to bar the action against Beech.

## I. UTAH'S PRODUCT LIABILITY STATUTE OF REPOSE

Statutes of repose, such as section 3 of the Product Liability Act, are different from statutes of limitations, although to some extent they serve the same ends. *See* McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am.U.L.Rev. 579, 582–87 (1981) (discussing the two types of statutes and variations of statutes of repose). A statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated or the remedy for the wrong committed is deemed waived. A statute of repose bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action. The statute of repose in this case begins to run from the date of first sale, or the date of manufacture, of a product alleged to be defective.

To be constitutional, a statute of limitations must allow a reasonable time for the filing of an action after a cause of action arises. *Horn v. Shaffer*, 47 Utah 55, 151 P. 555 (1915); *Saylor v. Hall*, Ky., 497 S.W.2d 218 (1973). In *Wilson v. Iseminger*, 185 U.S. 55, 62, 22 S.Ct. 573, 575, 46 L.Ed. 804 (1902), the United States Supreme Court stated:

> It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions.

Since a statute of repose begins to run from a date unrelated to the date of an injury, it is not designed to allow a reasonable time for the filing of an action once it arises. Therefore, a statute of repose may bar the filing of a lawsuit even though the cause of action did not even arise until after it was barred and even though the injured person was diligent in seeking a judicial remedy. Section 3 of the Utah Product Liability Act bars actions without regard to when an injury occurs and is not designed to provide a reasonable time within which to file a lawsuit. Indeed, a statute of repose may cut off a cause of action even though it is filed within the period allowed by the relevant statute of limitations.

■ The Utah statute of repose is sweeping and absolute once the statutory period has elapsed. Section 78–15–3 bars all legal actions for death, personal injury, or damage to property caused by a defec-

tive product, if the action is filed more than six years after the date of first sale for "use or consumption," or ten years after the date of manufacture. The immunity from suit conferred protects all manufacturers, both domestic and foreign, and all persons in a manufacturer's chain of distribution, from the manufacturer to the last seller. Section 3 is not aimed at abolishing nuisance suits; on the contrary, its purpose, as shown below, is to bar injured plaintiffs' judicial remedies in wholly meritorious ·cases. The immunity granted is not related to the degree of the manufacturer's culpability in placing a defective product in the stream of commerce. Thus, the immunity is not limited to actions based on strict liability, but extends also to actions based on negligence, gross negligence, recklessness, willful misconduct, and even intentional misconduct, such as a manufacturer's intentional failure to warn of *known* dangerous defects that could cause widespread injury or death. Indeed, at least one court has held that a similar statute of repose cut off a cause of action even though the manufacturer could have averted the danger by simply warning a consumer or user of the hazard. *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 212 (1981). *Cf. Adams v. General Dynamics Corp.*, 405 F.Supp. 1020 (N.D.Cal.1975) (where manufacturer failed to give warning of defect that resulted in death of twelve people). Furthermore, neither the inherent dangerousness of the manufacturer's product nor the expected useful life of the product affects the immunity conferred. The immunity protects a manufacturer whether the defective product has an expected useful life of four years or twenty-four years and even though the defect is not detectable by a user so that he is wholly unable to protect himself.

## II.   PRODUCTS LIABILITY LAW

■ Products liability law evolved because of fundamental changes in the nation's economy. The industrialization of the economy and the development of mass production and nationwide marketing in the nineteenth and twentieth centuries have resulted in widespread injury and death from dangerously defective products. The courts responded by allowing consumers injured by a manufacturer's product to sue the manufacturer, *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 394, 111 N.E. 1050, 1055 (1916), and by shifting the risk of loss from consumers to manufacturers through development of the legal doctrine of strict liability. *See, e.g., Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1963). That doctrine was premised on the proposition that the cost of injuries caused by defective products which are sold for profit should be considered a cost of doing business to be borne by manufacturers, through insurance if necessary, rather than by the injured individuals, who could not effectively protect themselves by insurance or otherwise. In addition, the effect of strict liability has no doubt been to encourage safer manufacturing practices and product designs, thereby reducing the incidence of death and injury. *See* Cowan, *Some Policy Bases of Products Liability*, 17 Stan.L. Rev. 1077, 1086–87 (1965). Thus, the law of strict liability aligned the interest of the individual in being free of harm from defective goods with the public interest generally in encouraging greater safety through making the costs of defective products a charge against profits. *See generally* Calabresi, *Product Liability: Curse or Bulwark of Free Enterprise*, 27 Clev.St.L.Rev. 313 (1978).

However, these goals have not been fully achieved. The magnitude of the health and safety problems created by defective products was outlined by the New Hampshire Supreme Court in *Heath v. Sears, Roebuck & Co.*, 123 N.H. 512, 464 A.2d 288, 293 (1983):

[T]he modern experience with consumer products has been one of ever-improving technology and rising standards of living, but also of injury and death:

"Americans—20 million of them—are injured in the home each year from consumer products. Of the total, some

100,000 are permanently disabled and some 30,000 are killed. A significant number could have been spared if more attention had been paid to hazard reduction....

The exposure of consumers to unreasonable consumer product hazards is excessive by any standard of measurement."

Significantly, these figures do not even take into account the hazards to life and limb created by defective products used outside the home, such as automobiles, or by defective products used in industrial and commercial applications.

Indeed, long-delayed health hazards from prescription drugs such as DES (which may cause cancer in the daughters of patients who have taken that drug), and chemicals such as asbestos and vinyl chloride, can cause disease and death many years after exposure. *See, e.g., Mathis v. Eli Lilly and Co.*, 719 F.2d 134 (6th Cir.1983) (plaintiff sued for damages for cervical cancer which developed in 1980 apparently from the plaintiff's mother's injestion of DES in 1955); *Karjala v. Johns-Manville Products Corp.*, 523 F.2d 155 (8th Cir.1975) (asbestos dust); *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 607 P.2d 924, 163 Cal.Rptr. 132 (1980) (DES). In *Heath v. Sears, Roebuck & Co.*, 123 N.H. 512, 464 A.2d 288, 295 (1983), the court observed:

The twelve-year limit [of the New Hampshire statute of repose] is unreasonable because the mere purchase of pills produced by a drug manufacturer in California, or of a defective automobile made in Michigan, does not place the consumer on notice of a hidden defect injurious to his health or safety. When product defects lead to injury, our law has long provided for recovery without regard to *when* the substance or object was made or placed into the national or international stream of commerce. This is particularly important in cases where the injuries may not clearly manifest themselves until years later, such as the clear-cell adenocarcinomas found in the daughters of mothers who twenty or more years previously took a female es-trogen pill commonly known as DES (diethyl-stilbestrol). *See, e.g., Bichler v. Eli Lilly and Co.*, 55 N.Y.2d 571, 577–78, 436 N.E.2d 182, 184, 450 N.Y.S.2d 776, 778 (1982).

### III. UTAH'S OPEN COURTS PROVISION

Article I, section 11 of the Utah Constitution is part of the Declaration of Rights. It declares that an individual shall have a right to a "remedy by due course of law" for injury to "person, property, or reputation." Specifically, that section states:

All courts shall be open, and every person, for an injury done to him in his person, property, or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel any civil cause to which he is a party.

Thirty-seven states have constitutional provisions that are essentially similar to the Utah provision. McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am.U. L.Rev. 579, 615 n. 218 (1981). These provisions, which have no analogue in the federal Constitution, and the better-known due process clauses found in both state and federal constitutions appear to have originated with the Magna Carta and "Sir Edward Coke's Gloss on Chapter 29 of the 1297 Magna Carta [which] is remarkably similar to these remedy provisions." McGovern, *supra* at 615 and n.219 at 615 (*citing* E. Coke, *The Second Part of the Institutes of the Laws of England* pt. I, 53–56 (1642)). *See also* Note, *Alabama's Products Liability Statute of Repose*, 11 Cum. L.Rev. 163, 173; 2 Coke, *Institutes*, ch. 29, at 56.

■ Provisions such as section 11 have been referred to as "open courts" clauses and "remedies" clauses. McGovern, *supra* at 615–16. In fact, section 11 was designed

to accomplish several purposes. The clear language of the section guarantees access to the courts and a judicial procedure that is based on fairness and equality. *See generally Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* Utah, 657 P.2d 1293, 1296 (1982); *Industrial Commission v. Evans,* 52 Utah 394, 409, 174 P. 825, 829 (1918). A plain reading of section 11 also establishes that the framers of the Constitution intended that an individual could not be arbitrarily deprived of effective remedies designed to protect basic individual rights. A constitutional guarantee of access to the courthouse was not intended by the founders to be an empty gesture; individuals are also entitled to a remedy by "due course of law" for injuries to "person, property, or reputation." [1]

The New Hampshire Supreme Court in referring to the history of that state's similarly worded open courts provision stated that it was intended to secure adequate remedies for violated rights.[2] The court stated:

> The concept of allowing a reasonable period of time for suit to be brought after the cause of action arises is not new in our law, for along with "substantive rights, the first settlers brought over the individual rights of adequate remedy and convenient procedure." *State v. Saunders,* 66 N.H. 39, 74, 25 A. 588, 589 (1889). Thus, the "right to an adequate remedy [exists] for the infringement of a right derived from the unwritten law." *Id.,* 25 A. at 589. When it came time to establish a post-revolution form of government, the first part of our Constitution [which included an open courts provision] was devoted to chronicling our inherent rights.

*Heath v. Sears, Roebuck & Co.,* 123 N.H. 512, 464 A.2d 288, 294 (1983). *Accord Lankford v. Sullivan, Long & Hagerty,* Ala., 416 So.2d 996 (1982); *Kennedy v. Cumberland Engineering Co., Inc.,* R.I., 471 A.2d 195 (1984); *Nelson v. Krusen,* Tex., 678 S.W.2d 918 (1984). *Compare Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984).

### A.

Defining the scope of the constitutional protection that section 11 affords individual substantive rights is a task of the utmost delicacy and requires a careful consideration of other important, and sometimes competing, constitutional interests. The meaning of section 11 must be taken not only from its history and plain language, but also from its functional relationship to other constitutional provisions. Section 11 and the Due Process Clause of Article I, section 7 are related both in their historical origins and to some extent in their constitutional functions. To a degree, the two provisions are complementary and even overlap, but they are not wholly duplicative. Both act to restrict the powers of both the courts and the Legislature. *See Masich v. United States Smelting, Refining & Mining Co.,* 113 Utah 101, 191 P.2d 612, 623–24, *appeal dismissed,* 335 U.S. 866, 69 S.Ct. 138, 93 L.Ed. 411 (1948); *Nelson v. Smith,* 107 Utah 382, 154 P.2d 634, 637–38 (1944); *Brown v. Wightman,* 47 Utah 31, 151 P. 366, 366–67 (1915); *Saylor v. Hall,* Ky., 497 S.W.2d 218 (1973).

The law in this state, as it is elsewhere, is that "no one has a vested right in any rule of law" under either the open courts or the due process provisions of the Utah Constitution. *Masich v. United States Smelting, Refining & Mining Co., supra,*

---

**1.** We do not mean to say, however, that section 11 requires only a judicial remedy for the protection of "person, property or reputation." The term "due course of law" may permit nonjudicial type remedies in lieu of judicial remedies as long as other constitutional provisions are not violated and the remedy provided is reasonable and equitable.

**2.** Part 1, article 14 of the New Hampshire Constitution provides: "Every subject of this state is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay; conformably to the laws." N.H.Rev.Stat.Ann., 1970, vol. 1, p. 63.

113 Utah at 124, 191 P.2d at 624. *See also Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 16, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976); *Second Employers' Liability Cases,* 223 U.S. 1, 50 (1912); *Thornton v. Mono Mfg. Co.,* 99 Ill.App.3d 722, 54 Ill. Dec. 657, 661, 425 N.E.2d 522, 526 (1981); *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662, 667 (1972); *Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 302 S.E.2d 868, 882 (1983). *Cf. Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 88, 98 S.Ct. 2620, 2638, 57 L.Ed.2d 595 (1978); *Martinez v. California,* 444 U.S. 277, 282 n. 5, 100 S.Ct. 553, 557 n. 5, 62 L.Ed.2d 481 (1980).

■ Specifically, neither the due process nor the open courts provision constitutionalizes the common law or otherwise freezes the law governing private rights and remedies as of the time of statehood.[3] *Masich, supra,* 113 Utah at 124–25, 191 P.2d at 624. It is, in fact, one of the important functions of the Legislature to change and modify the law that governs relations between individuals as society evolves and conditions require. However, once a cause of action under a particular rule of law accrues to a person by virtue of an injury to his rights, that person's interest in the cause of action and the law which is the basis for a legal action becomes vested, and a legislative repeal of the law cannot constitutionally divest the injured person of the right to litigate the cause of action to a judgment. *E.g., Spanish Fork Westfield Irrigation Co. v. District Court of Salt Lake County,* 99 Utah 527, 104 P.2d 353, 360 (1940); *Gibbes v. Zimmerman,* 290 U.S. 326, 332, 54 S.Ct. 140, 142, 78 L.Ed 342 (1933); *Pritchard v. Norton,* 106 U.S. 124, 132, 1 S.Ct. 102, 107, 27 L.Ed. 104 (1882); *Lamb v. Wedgewood South Corp., supra,* 302 N.E.2d at 888.

Necessarily, the Legislature has great latitude in defining, changing, and modernizing the law, and in doing so may create new rules of law and abrogate old ones. Nevertheless, the basic purpose of Article I, section 11 is to impose some limitation on that power for the benefit of those persons who are injured in their persons, property, or reputations since they are generally isolated in society, belong to no identifiable group, and rarely are able to rally the political process to their aid. *Cf. Rosin v. Lidgerwood Mfg. Co.,* 89 App.Div. 245, 86 N.Y.S. 49 (1903).

Beech's contention that section 11 is only a "philosophical statement" that imposes no limitations on legislative power is unacceptable. If the legislative prerogative were always paramount, and the Legislature could abolish any or all remedies for injuries done to a person, his property, or reputation, section 11 would be a useless appendage to the Constitution. The very assertion that section 11 is only a "philosophical statement" is necessarily inconsistent with the premise of a written constitution which was intended to be, and is, a statement of positive law that limits the powers of government. Article I, section 26 rivets section 11, and all the other rights in the Declaration of Rights, into the fundamental law of the State and makes them enforceable in a court of law. Article I, section 26 declares that "the provisions of this constitution are mandatory and prohibitory unless by express words they are declared to be otherwise." The rights protected by section 11 are not declared to be other than "mandatory and prohibitory." The South Dakota Supreme Court stated the view to which we subscribe in *Daugaard v. Baltic Cooperative Building Supply Ass'n,* S.D., 349 N.W.2d 419, 425 (1984):

> Our constitution ... is solid core upon which all our state laws must be premised. Clearly and unequivocally, our constitution directs that the courts of

---

**3.** Nevertheless, the Legislature does not have the power to abolish all rights of action for injuries to one's person. In *Masich, supra,* 113 Utah at 124, 191 P.2d at 624, this Court stated that if the Legislature were to abolish all negligence actions against employers and provide no substitute remedy, the Workmen's Compensation Act would be unconstitutional. To some extent, therefore, the common law at the time of statehood provides at least a measure of the kinds of legal rights that the framers must have had in mind for the protection of life, property, and reputation.

this state shall be open to the injured and oppressed. We are unable to view this constitutional mandate as a faint echo to be skirted or ignored. Our constitution is free to provide greater protections for our citizens than are required under the federal constitution.... Our constitution has spoken, and it is our duty to listen.

On the other hand, section 11 rights are not always paramount, either.[4] They do not sweep all other constitutional rights and prerogatives before them. They, too, like many constitutional rights, must be weighed against and harmonized with other constitutional provisions. The accommodation of competing, and sometimes clashing, constitutional rights and prerogatives is a task of the greatest delicacy, although a common and necessary one in constitutional adjudication. For example, the right to protection of a person's reputation must be accommodated to the right of others to speak freely. *See Seegmiller v. KSL, Inc.,* Utah, 626 P.2d 968, 973 (1981). The right to protection of one's property cannot defeat the power of the state to condemn private property by the power of eminent domain or to enact zoning regulations which may affect the value of private property. *See* Article I, section 22. The right to the protection of one's person must yield to the public's right to enforcement of the criminal laws. Similarly, legal causes of action which provide remedies that protect section 11 interests may, in some cases, have to yield to the power of the Legisla-

ture to promote the public health, safety, morals, and welfare.[5]

For example, the Legislature has abolished certain common law remedies for personal injuries and substituted other remedies pursuant to the Workmen's Compensation Act and the Occupational Disease Act. These remedies are different from, and in some ways, broader than, the common law remedies they displace. *See Masich, supra,* 113 Utah at 124, 191 P.2d at 624. The Legislature has also substituted a nonjudicial remedy for certain kinds of damages caused by personal injuries sustained in automobile accidents. The Utah No-Fault Automobile Insurance Act, U.C.A., 1953, § 31–41–1, *et seq.,* provides an insurance remedy for special damages in lieu of a common law remedy.

### B.

A number of states have enacted products liability, medical malpractice, and architects and builders statutes of repose. The statutes have been attacked on various constitutional grounds, including state and federal equal protection of the laws provisions and state open courts provisions. Several state supreme courts have held that statutes of repose violate open courts provisions. *E.g., Lankford v. Sullivan, Long & Hagerty,* Ala., 416 So.2d 996 (1982) (products liability statute of repose); *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984) (dictum, medical malpractice);[6] *Diamond v. E.R. Squibb & Sons,* Fla., 397 So.2d 671 (1981) (products liability);[7] *Over-*

**4.** The term "rights," when used with reference to section 11, is used loosely. Section 11 protects remedies by due course of law for injuries done to the substantive interests of person, property, and reputation. What section 11 is primarily concerned with is not particular, identifiable causes of action as such, but with the availability of legal remedies for vindicating the great interest that individuals in a civilized society have in the integrity of their persons, property, and reputations.

**5.** Obviously, section 11 rights also are subject to reasonable rules of procedure for the adjudication of these and all other rights.

**6.** The Arizona Constitution, Article XVIII, section 6 provides: "The right of action to recover

damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation." Compared with the language in Article I, section 11 of the Utah Constitution and all other state open courts provisions of which we are aware, the Arizona provision is more rigid and specific in establishing an individual's constitutional right to recover damages for injuries. Ariz.Rev.Stat.Ann., 1984, vol. 1A, at 351.

**7.** The Florida Supreme Court originally required a "compelling state interest" to justify a products liability statute of repose under Florida's open courts provision. *Purk v. Federal Press Co.,* Fla., 387 So.2d 354 (1980). Because of problems caused by that strict interpretation,

land Construction Co. v. Sirmons, Fla., 369 So.2d 572 (1979) (engineers, architects and builders statute of repose); Saylor v. Hall, Ky., 497 S.W.2d 218 (1973) (builders statute of repose); Heath v. Sears, Roebuck & Co., 123 N.H. 512, 464 A.2d 288 (1983) (products liability statute of repose); Daugaard v. Baltic Cooperative Building Supply Ass'n, S.D., 349 N.W.2d 419 (1984) (architects and builders statute of repose); Kennedy v. Cumberland Engineering Co., R.I., 471 A.2d 195 (1984) (products liability statute of repose); Nelson v. Krusen, Tex., 678 S.W.2d 918 (1984) (medical malpractice statute of repose); Phillips v. ABC Builders, Inc., Wyo., 611 P.2d 821 (1980) (builders statute of repose violative of open courts and equal protection provisions). For cases holding statutes of repose unconstitutional on equal protection grounds, see, e.g., Shibuya v. Architects Hawaii Ltd., 65 Hawaii 26, 647 P.2d 276 (1982) (architects and builders statute of repose); Fujioka v. Kam, 55 Hawaii 7, 514 P.2d 568 (1973) (architects and builders statute of repose); Loyal Order of Moose, Lodge 1785 v. Cavaness, Okl., 563 P.2d 143 (1977) (architects and builders statute of repose); Broome v. Truluck, 270 S.C. 227, 241 S.E.2d 739 (1978) (architects and builders statute of repose); Kallas Millwork Corp. v. Square D Co., 66 Wis. 2d 382, 225 N.W.2d 454 (1975) (architects, engineers, and designers statute of repose).

On the other hand, a number of cases have held statutes of repose constitutional under open courts provisions.[8] E.g., Thornton v. Mono Mfg. Co., 99 Ill.App.3d 722, 54 Ill.Dec. 657, 425 N.E.2d 522 (1981)

(products liability statute of repose); Dague v. Piper Aircraft Corp., 275 Ind. 520, 418 N.E.2d 207 (1981) (products liability statute of repose); Tetteroton v. Long Mfg. Co., 314 N.C. 44, 332 S.E.2d 67 (1985) (products liability statute of repose); Davis v. Whiting Corp., 66 Or.App. 541, 674 P.2d 1194 (1984) (products liability statute of repose).

In our view, the cases holding products liability statutes of repose constitutional under state open courts or remedies provisions have all but read those constitutional provisions out of their respective constitutions, at least insofar as they provide substantive, as opposed to procedural, protections. A leading case holding a products liability statute of repose constitutional under such a provision is Dague v. Piper Aircraft Corp., 275 Ind. 520, 418 N.E.2d 207 (1981). The court relied on the general principle that one of the functions of the legislative power is "to remedy defects in the common law as they develop, and to adapt to the change of time and circumstance." Id. 418 N.E.2d at 213. The court also relied heavily on the usual deference that courts accord legislative enactments by way of a presumption of constitutionality. Id. We agree with and affirm those principles as general propositions, but we do not agree that a proper constitutional analysis of section 11 can be made on those principles alone. We are simply not at liberty to eviscerate a mandatory provision of our Declaration of Rights by limiting our analysis to those principles alone. That kind of analysis would result in the legislative power prevailing in every case,

---

the court modified the standard and made it more flexible. Pullum v. Cincinnati, Inc., Fla., 476 So.2d 657 (1985). Nevertheless, the court has specifically reaffirmed its holding in Diamond that a legislative attempt to bar a DES victim's cause of action by a statute of repose violates Florida's open courts clause. Pullum, 476 So.2d at 659 n. "*."

**8.** Professor McGovern in 1981 article, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am.U.L.Rev. 579, 581 (1981), states that eighteen states have consistently held statutes of repose constitutional under various kinds of constitutional attacks,

that nine states have consistently held them unconstitutional, and that two states have held both ways with respect to different kinds of statutes of repose. Since 1981, however, when that count was made, Alabama, Arizona, Rhode Island, South Carolina, South Dakota, Texas, and now Utah have joined either the last or the next to last of the above three categories. See Lankford v. Sullivan, Long & Hagerty, supra; Kenyon v. Hammer, supra; Broome v. Truluck, supra; Daugaard v. The Baltic Cooperative Building Association, supra; Kennedy v. Cumberland Engineering Co., supra; Nelson v. Krusen, supra.

and would deprive the constitutional rights embraced in section 11 of any meaningful content or force. If we are free to refuse to give substance and meaning to section 11 because it stands in tension with the power of the Legislature to adjust conflicting interests and values in society, we could as well emasculate every provision in the Declaration of Rights by the same method of analysis. We decline to do that.

*Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972), is also a leading case for the position that a statute of repose is constitutional. Although it was not decided under an "open courts" provision, it is frequently relied upon by those courts which have sustained the validity of statutes of repose against challenges under open courts provisions. The reasoning in *Rosenberg* proceeds in part on the universally accepted principles that legislative power must have broad latitude and its enactments must be extended a presumption of constitutionality. In addition, the court argued that a statute of repose does not abrogate a cause of action, and therefore does not destroy it before it can arise. The statute, according to the court, merely defines the time during which a cause of action exists. By definition, then, when that time expires, no cause of action exists, and none is therefore abrogated. The injured party simply has no cause of action, and the injury done him is *damnum absque injuria.*[9]

We reject this view because it begs the question. The question, in our view, is whether there is a remedy by due course of law, and that question is not answered by arguing that a cause of action is not abrogated but is only defined to be temporally limited. In short, the constitutional protection cannot be evaded by the semantic argument that a cause of action is not cut off

but only defined to exist for a specified period of time.

To a degree, the open courts provision is an extension of the due process clause. Indeed, the open courts provision and the due process clause also have an overlapping function, to some extent, with respect to the abrogation of causes of action. If the Legislature were to abolish all causes of action for injuries to one's person or property caused by defective products and provide no substitute equivalent remedy, we have little doubt that that would violate section 11, and perhaps even the due process clause of Article I, section 7. In *Masich v. United States Smelting & Refining Co.,* 113 Utah 101, 125, 191 P.2d 612, 624 (1948), the Court stated:

> Assuming the legislature can abolish the common law right of action for negligence, must it return a substitute right to each and every employee in some way affected by the abrogation to meet the test of constitutionality? If the legislature were to abolish all compensation and all common law rights for negligence of an employer, no contention could reasonably be made that it was a proper exercise of the police power. The reverse would be true and pauperism with its concomitants of vice and crime would flourish.

Indeed, the United States Supreme Court in *Wilson v. Iseminger,* 185 U.S. 55, 22 S.Ct. 573, 46 L.Ed. 804 (1902), noted the fundamental obligation of government to provide reasonable remedies for wrongs done persons.

> Every government is under obligation to its citizens to afford them all needful legal remedies.... A statute could not bar the existing rights of claimants without affording this opportunity [to try

---

9. The Nebraska Supreme Court has used an analysis similar to that in *Dague* and *Rosenberg* to sustain a statute of repose in the face of an open courts provision in *Colton v. Dewey,* 212 Neb. 126, 321 N.W.2d 913, 916 (1982). However, in subsequent cases, the court has created judicial exceptions to mitigate the harsh effects of such statutes. In *Sacchi v. Blodig,* 215 Neb. 817, 341 N.W.2d 326, 330–31 (1983), the court

held that insanity "tolled" the statute. Next, in *Macku v. Drackett Products Co.,* 216 Neb. 176, 343 N.W.2d 58, 61 (1984), the court held that infancy "tolled" the statute. Finally, in *MacMillen v. A.H. Robins Co.,* 217 Neb. 338, 348 N.W.2d 869, 872 (1984), the court created an exception to the products liability statute of repose where the manufacturer fraudulently refused to warn of known hazards caused by the Dalkon Shield.

rights in the courts]; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of its provisions. *Id.* at 62, 22 S.Ct. at 575.

The basic rule has been summarized in a leading treatise, 51 Am.Jur.2d *Limitations of Actions*, § 28, at 613:

It is not within the power of the legislature, under the guise of a limitation provision, to cut off an existing remedy entirely, since this would amount to a denial of justice, and, manifestly, an existing right of action cannot be taken away by legislation which shortens the period of limitation to a time that has already run.

(Footnotes omitted). *But see Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), where the United States Supreme Court sustained a limitation of liability provision against due process and equal protection challenges. However, the decision was justified at least in part on the ground that Congress had provided for "a reasonably just substitute for the common-law or state tort law remedies it replaces." *Id.* at 88, 98 S.Ct. at 2638.

In sum, section 11 does not recede before every legislative enactment, but neither may it be applied in a mechanical fashion to strike every statute with which there may be conflict. To hold every statute of repose unconstitutional without regard to the legislative purpose could result in a legislative inability to cope with widespread social or economic evils. In the instant case, the Legislature has imposed less than a total abrogation of all remedies for injuries caused by defective products since actions are barred only after a specified period of time has elapsed.

■ We hold that section 11 of the Declaration of Rights and the prerogative of the legislature are properly accommodated by applying a two-part analysis. First, section 11 is satisfied if the law provides an injured person an effective and reasonable alternative remedy "by due course of law" for vindication of his constitutional interest. The benefit provided by the substitute must be substantially equal in value or other benefit to the remedy abrogated in providing essentially comparable substantive protection to one's person, property, or reputation, although the form of the substitute remedy may be different. *See generally Masich v. United States Smelting, Refining, & Mining Co.*, 113 Utah 101, 191 P.2d 612, 624 (1948); *Lankford v. Sullivan, Long & Hagerty*, Ala., 416 So.2d 996 (1982); *Nelson v. Krusen*, Tex., 678 S.W.2d 918 (1984). *See also New York Central R.R. v. White*, 243 U.S. 188, 201, 37 S.Ct. 247, 252, 61 L.Ed. 667 (1917), where the United States Supreme Court in dictum stated, "It perhaps may be doubted whether the State could abolish all rights of action on the one hand, or all defenses on the other, without setting up something adequate in their stead." *See also Ingraham v. Wright*, 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977), where the Court stated, "Among the historic liberties so protected was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." (Footnote omitted).[10]

■ Second, if there is no substitute or alternative remedy provided, abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective. *Heath v. Sears, Roebuck & Co.*, 123 N.H. 512, 464 A.2d 288, 294–95 (1983); *Nelson v. Krusen*, Tex., 678 S.W.2d 918 (1984). *See generally* Note, *The Fairness and Constitutionality of Statutes of Limitations for Toxic Tort*

---

**10.** In *Pruneyard Shopping Center v. Robins*, 447 U.S. 74, 94, 100 S.Ct. 2035, 2047, 64 L.Ed.2d 741 (1980), Justice Marshall, in a concurring opinion, suggested that a reasonable alternative remedy must be provided when "core" common-law rights are abolished. *See also e.g., Brinkerhoff-Faris Trust & Savings Co. v. Hill*, 281 U.S. 673, 682, 50 S.Ct. 451, 454, 74 L.Ed. 1107 (1930); *Crane v. Hahlo*, 258 U.S. 142, 147, 42 S.Ct. 214, 215, 66 L.Ed. 514 (1922).

*Suits,* 96 Harv.L.Rev. 1683, 1692 (1983). For the reasons stated below, we hold that the elimination of all causes of action after the period specified in section 3 of the Utah Product Liability Act is arbitrary, unreasonable, and will not achieve the statutory objective.

## C.

The objectives of the Utah Product Liability Act are set out in section 78–15–2, which states:

Legislative finding and declarations—Purpose of act.—(1) The legislature finds and declares that the number of suits and claims for damages and the amount of judgments and settlements arising from defective products has [sic] increased greatly in recent years. Because of these increases, the insurance industry has substantially increased the cost of product liability insurance. The effect of increased insurance premiums and increased claims has increased product cost through manufacturers, wholesalers and retailers passing the cost of premiums to the consumer. Further, certain product manufacturers are discouraged from continuing to provide and manufacture such products because of the high cost and possible unavailability of product liability insurance.

(2) In view of these recent trends, and for the purpose of alleviating the adverse effects which these trends are producing in the manufacturing industry, it is necessary to protect the public interest by enacting measures designed to encourage private insurance companies to continue to provide product liability insurance.

(3) In enacting this act, it is the purpose of the legislature to provide a reasonable time within which actions may be commenced against manufacturers, while limiting the time to a specific period for which product liability insurance premiums can be reasonably and accurately

calculated; and to provide other procedural changes to expedite early evaluation and settlement of claims.

There are several reasons why section 3 of the Act is unreasonable and arbitrary and will not further the statutory objectives.

1. The six- and ten-year periods in the Act are arbitrary because they apply to all kinds of products, irrespective of their useful life. The statute does not even purport to approximate an average expected life of the products covered, nor is it based on products that have presented particular safety difficulties. It applies alike to toasters, automobiles, road graders, and prescription drugs.

2. The Utah Product Liability Act was drafted and sponsored by the Utah Manufacturers' Association, composed of approximately 500 members. Note, *The Utah Product Liability Limitation of Action: An Unfair Resolution of Competing Concerns,* 1979 Utah L.Rev. 149 ("Note"). An informal survey of the Association based on questionnaires sent to its members indicated that only one member reported having a products liability claims made against it. *Id.* at 151. Indeed, prior to passage of the Act, this Court had not even ruled that strict liability for product defects was a cognizable cause of action in this state.[11] Notwithstanding the apparent absence of any significant product liability litigation in Utah, the Legislature based the statute on a finding that the number of claims for damages arising from defective products has increased greatly in recent years. *See* U.C.A., 1953, § 78–15–2(1). While that may have been true nationally, it does not appear to have been the case within the state.

3. The Utah statute of repose is incapable of achieving the avowed purpose of reducing the insurance premiums that manufacturers must pay. Product liability insurance premiums for Utah manufacturing companies are established on the basis of nationwide data, not on a manufacturer's

---

**11.** This Court adopted the doctrine of strict liability in 1979 in *Ernest W. Hahn v. Armco Steel*

*Co.,* Utah, 601 P.2d 152 (1979).

experience in Utah. *Note,* at 151. "Although assuring the availability of reasonably priced products liability insurance is an admirable goal, it will not be accomplished or even furthered by limiting access to courts in this state where such access is seldom sought." *Id.*

Section 101(D) of the Model Uniform Product Liability Act which was proposed by the United States Department of Commerce, confirms the point:

> Product liability insurance rates are set on the basis of countrywide, rather than individual state, experience. Insurers utilize countrywide experience because a product manufactured in one state can readily cause injury in any one of the other states, the District of Columbia, or the Commonwealth of Puerto Rico. One ramification of this practice is that there is little an individual state can do to solve the problems caused by product liability.

44 Fed.Reg. 62,714, 62,716 (Oct. 31, 1979). The findings supporting section 101 of the Model Act indicate that studies performed by the states of Maine and Georgia concluded that individual state tort reforms would do little to affect product liability premiums and would not stabilize product liability insurance rates. 44 Fed.Reg. 62,714, 62,716–17 (Oct. 31, 1979). *Lankford v. Sullivan, Long & Hagerty,* Ala., 416 So.2d 996, 1003 (1982), held that there was "not a sufficient relationship between the statute and the perceived social evil to sustain the statute." *Heath v. Sears, Roebuck & Co.,* 123 N.H. 512, 464 A.2d 288, 294 (1983), also held to the same effect, and, in addition, observed that whatever insurance crisis had existed, had abated. Furthermore, we note that since this State adopted the doctrine of strict liability in product liability cases, *Ernest W. Hahn, Inc. v. Armco Steel Co.,* Utah, 601 P.2d 152, 158 (1979), the number of cases that have reached this Court based on a manufacturer's strict liability has been almost negligible. *Pate v. Marathon Steel Co.,* Utah, 692 P.2d 765 (1984); *Barson v. E.R. Squibb & Sons, Inc.,* Utah, 682 P.2d 832 (1984); *DCR Inc. v. Peak Alarm Co.,* Utah,

663 P.2d 433 (1983); *Mulherin v. Ingersoll-Rand Co.,* Utah, 628 P.2d 1301 (1981).

4. The number of claims barred would not be sufficient to affect insurance premium rates in any event. The Federal Interagency Task Force was established by the Economic Policy Board of the White House as a result of manufacturers' claims that a product liability crisis had developed that rendered product liability insurance unaffordable and even unavailable. The Task Force undertook a comprehensive study of the issue during 1976 and 1977 and found that:

> [p]roduct liability insurance is usually provided on what is called 'occurrence' basis, whereby coverage is provided for all product-related damages that occur during the policy period. Neither the time of manufacture of the product nor the time at which the claim is made determines whether the policy provides coverage.

Interagency Task Force on Product Liability, U.S. Dep't. of Commerce, Final Report V–5 (1977). More important is the fact that only 2.6% of the products involved in product liability actions were purchased more than six years prior to the event causing personal injury, according to a study conducted by the Insurance Services Office, an insurance industry-sponsored agency. Insurance Services Office, *Product Liability Closed Claim Survey: A Technical Analysis of Survey Results,* at 83 (1977) (*cited in Note, supra,* at 151).

Because rates are set on an "occurrence" basis, one student of products liability insurance has observed:

> Although a statute of repose certainly would reduce recoveries by persons injured by products, there may not be a corresponding reduction in insurance premium rates. An eight- to ten-year statute of repose, for example, would be too long to improve the predictability of insurance claims.

(Footnotes omitted). McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose,* 30 Am.U.

L.Rev. 579, 595 (1981). In short, the number of cases arising after the statutory 6-year period is insignificant and, at best, would have a negligible effect on insurance rates generally.

5. The Utah statute of repose is likely to provide less incentive to manufacturers to take adequate safety precautions in the manufacture and design of products having a useful life of more than six years, thereby increasing the already substantial number of persons who have been injured or killed by shoddy design or workmanship. Thus, the statute may well be counterproductive in terms of public safety.

■ In sum, we conclude that the Utah statute of repose does not reasonably and substantially advance the stated purpose of the statute. *See Lankford v. Sullivan, Long & Hagerty, supra,* 416 So.2d at 1003; *Heath v. Sears & Roebuck Co., supra,* 464 A.2d at 295. Its effect in that regard is more "fanciful than real," *Malan v. Lewis,* Utah, 693 P.2d 661, 673 (1983), and whatever beneficial effects may accrue from the statute of repose do not justify the denial of the rights protected by Article I, section 11.

### D.

Prior Utah cases which have addressed the constitutionality of other statutes of repose are not inconsistent with our holding in this case. *Allen v. Intermountain Health Care, Inc.,* Utah, 635 P.2d 30 (1981), sustained the constitutionality of the Medical Malpractice Act statute of repose against challenges based on Utah's equal protection of the laws provision, Article I, section 24, and the Utah constitutional prohibition against enactment of special laws, Article VI, section 26. No issue was raised as to the constitutionality of the statute under Article I, section 11. Beyond that, there was no showing that the legislative purpose in enacting the statute would not be achieved. *Compare Malan v. Lewis,* Utah, 693 P.2d 661 (1984), holding that the Utah guest statute violated the state equal protection of the laws provision, in part because the discrimination made by the statute did not have a rational and substantial effect in furthering the supposed objective of the act and was therefore unconstitutionally discriminatory.

*Good v. Christensen,* Utah, 527 P.2d 223 (1974), sustained the constitutionality of a seven-year statute of repose intended to protect architects and builders. The Court observed that a person injured by a defect in a building would still have a remedy against an owner of the building and perhaps others. In sustaining the statute, the Court declined to make any analysis of the constitutional claims raised. It simply made the conclusionary statement that the attack on the "constitutionality of the statute ... [was] without merit." *Id.* at 225. Whether the Court in fact addressed the merits of Article I section 11 is speculative, and the ruling, therefore, has little persuasive effect here.

## IV. ARTICLE XVI, SECTION 5: WRONGFUL DEATH

Unlike the general language of the open courts provision in Article I, section 11, Article XVI, section 5 specifically endows a wrongful death cause of action with constitutional protection that, in a sense, is a particularized application of the open courts provision. The right protected by Article XVI, section 5 is not subject to the same kind of balancing analysis required by Article I, section 11. Article XVI, section 5 states:

> The right of action to recover damages for injuries resulting in death, shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, except in cases where compensation for injuries resulting in death is provided for by law.

This provision was based on the enactment of Lord Campbell's Act in 1846 in England to remedy a defect in the common law. *See Jones v. Carvell,* Utah, 641 P.2d 105, 107 (1982). The Act spread to this country, was enacted essentially in its present form in the Territory of Utah, and was then included in the Utah Constitution at statehood. The Journal of Constitution-

al Proceedings sheds little light on Article XVI, section 5, but a brief history of our provision was adumbrated in *Jones v. Carvell, supra,* 641 P.2d at 107. The provision was deemed to be a bar to the exclusive death benefit provisions of the Workmen's Compensation Act, and in 1920, Article XVI, section 5 was amended to add the last phrase to permit the workers' compensation laws to provide compensation for the death of a worker in lieu of a negligence action for wrongful death to recover damages. *See Halling v. Industrial Commission,* 71 Utah 112, 263 P. 78, 80 (1927). It is only because of the constitutional amendment that the death benefit provisions of the Workmen's Compensation Act have been held constitutional. *See Henrie v. Rocky Mountain Packing Corp.,* 113 Utah 415, 196 P.2d 487, 492 (1948); *Garfield Smelting Co. v. Industrial Commission,* 53 Utah 133, 178 P. 57 (1918). However, to the extent one does not qualify as a "dependent" for death benefits under the Compensation Act, he may still have a wrongful death cause of action for damages. *See generally Star v. Industrial Commission,* Utah, 615 P.2d 436, 438 (1980); *Oliveras v. Caribou-Four Corners, Inc.,* Utah, 598 P.2d 1320 (1979).

■■■■ Recently, in *Malan v. Lewis,* Utah, 693 P.2d 661 (1984), we referred to Article XVI, section 5 of the Constitution and observed that that provision seemed to "compel the conclusion that the [Utah] Guest Statute is unconstitutional insofar as it purports to bar the heirs of a guest killed as a result of a driver's negligence from bringing a wrongful death action against the host driver." *Id.* at 667. The plain meaning of the constitutional provision, as the above cases implicitly recognize, is to prevent the abolition of the right of action for a wrongful death, "whether in a wholesale or piecemeal fashion." *Id.* Although this interpretation of Article XVI, section 5 of the Constitution was only part of the reasoning in *Malan* and therefore only dictum, it is nevertheless consistent with the plain meaning of the constitutional provision and prior law, and sustains our conclusion that the plain meaning of the constitu-

tional provision cannot be harmonized with the statute of repose in this case.

Our conclusion is also supported by an opinion of the Oklahoma Supreme Court which considered whether a statute of repose in a wrongful death action was lawful under a constitutional provision almost identical to ours. *Roberts v. Merrill,* Okl., 386 P.2d 780 (1963), held unconstitutional an Oklahoma statute which abolished the right to file a wrongful death action five years after the occurrence of an accident since the death which gave rise to the cause of action did not occur until sometime later. The Oklahoma Supreme Court held that the plain language of the Oklahoma Constitution rendered the Legislature "powerless to abrogate the *right of action,* which is the right to effectively pursue a remedy, *except* by supplying to the designated beneficiaries under [the Oklahoma Workmen's Compensation Act] a new form of compensation." *Id.* at 783 (emphasis in original). The court stated:

> The limitation provisions contained in [the challenged statute] place a condition upon the right [to bring a wrongful death claim] itself in that they extinguish the claim before it arises and precludes [sic] the beneficiary from effectively pursuing the statutory remedy.
>
> . . . .
>
> In the case at bar, we are not concerned with the question of the general legislative power to regulate procedure governing the prosecution of death benefit rights, but with a restrictive condition which operates to abridge or abrogate the right itself to that class of persons whose decedents die later than the maximum period allowed to intervene between injury and demise. Such restriction, which bars the right to effectively pursue a remedy, is beyond the legislative authority.
>
> . . . .
>
> . . . It suffices to say that the cited section of the Constitution now, as before, absolutely prohibits the abrogation of "[t]he right of action to recover dam-

ages for injuries resulting in death." The "right of action"—a term far from synonymous with "cause of action"—means the right to effectively pursue an available remedy in a suitable forum whether successfully or not.

*Id.* at 785–86.

In *Ludwig v. Johnson*, 243 Ky. 533, 49 S.W.2d 347 (1932), the Kentucky Court of Appeals, construing a Kentucky constitutional provision also virtually identical to Article XVI, section 5 of the Utah Constitution, held that the Kentucky automobile guest statute was unconstitutional because it took "away the right to recover for death resulting from negligence, or wrongful act amounting to anything less than an intentional act, and to that extent it clearly contravenes section 241 of the Constitution." *Id.* 49 S.W.2d at 349. The Kentucky court relied upon its prior opinion in *Howard's Adm'r v. Hunter*, 126 Ky. 685, 104 S.W. 723, 724 (1907), where it stated:

It was the manifest intention of the constitutional provision quoted to allow an action to be maintained whenever the death of a person was caused by the negligent or wrongful act of another and it is not within the power of the Legislature to deny this right of action. The section is as comprehensive as language can make it. The words "negligence" and "wrongful act" are sufficiently broad to embrace every degree of tort that can be committed against the person.

*Ludwig v. Johnson*, 49 S.W.2d at 349. *See also Rosin v. Lidgerwood Mfg. Co.*, 89 App.Div. 245, 86 N.Y.S. 49 (1903).

The defendant argues that the Utah Product Liability Act is not in conflict with Article XVI, section 5 because "the Legislature did not repeal the wrongful death statute." The argument is that the Legislature is free to establish defenses and limitations to the liability arising from wrongful conduct which causes a death "so long as it does not thereby repeal or emasculate the statute." According to the defendant,

the instant statute only eliminates recovery in reasonably limited and well-defined circumstances and is therefore within the legislative power and not subject to the constitutional provision.

The defendant's argument is an invitation to rewrite the Constitution. If the constitutional provision means only that the Legislature may not directly repeal the wrongful death statute itself but may nullify the act,[12] in whole or in part, by indirect means, it lies within the power of the Legislature to circumvent Article XVI, section 5 at will. Constitutional rights do not hang from such gossamer threads. Clearly, the Legislature may enact reasonable procedures for the enforcement of wrongful death actions and may provide for reasonable defenses that are not inconsistent with the fundamental nature of the wrongful death action itself. *See generally, Van Wagoner v. Union Pacific Railroad Co.*, 112 Utah 189, 186 P.2d 293, 303 (1947). But it is the Constitution that grants the right to bring a wrongful death action to all persons, and that right may not be defeated on the wholly fortuitous event of how soon a death occurs after the manufacture or first sale of a product.

Finally, the defendant argues that the Utah Product Liability Act only places reasonable limitations on wrongful death actions and restricts recovery to certain reasonable circumstances. In light of our discussion of the open courts provision, that argument is without merit. Furthermore, the argument ignores the plain language of Article XVI, section 5, and exceeds whatever powers Article XVI, section 5 leaves to the Legislature.

## V. SEVERABILITY

Having held section 78–15–3 unconstitutional, we address the question whether the remainder of the Utah Product Liability Act is severable from section 3, since the

12. Article XVI, section 5 has been implemented by U.C.A., 1953, § 78–11–6 and § 78–11–7.

issue will no doubt arise when the case is tried.[13]

 "Severability, where part of an act is unconstitutional, is primarily a matter of legislative intent[,]" *Salt Lake City v. International Ass'n of Firefighters,* Utah, 563 P.2d 786, 791 (1977), which generally is determined by whether the remaining portions of the act can stand alone and serve a legitimate legislative purpose. As demonstrated above, the Act will not achieve the purposes set forth in section 78-15-2. We cannot conclude that the Legislature would have enacted sections 4 through 6 without section 3. We therefore hold the Act non-severable, and sections 4 through 6 invalid, especially in light of the restrictions this Court has already placed on strict liability.

In sum, we hold that section 78-15-3 is unconstitutional under Article I, section 11 and also under Article XVI, section 5 as applied to the facts of this case. The remainder of the Utah Product Liability Act, not being severable from section 3, is also invalid.

Reversed and remanded for further proceedings. Costs to appellant.

HALL, C.J., and HOWE, and DURHAM, JJ., concur.

ZIMMERMAN, J., does not participate herein.

---

**13.** The remaining sections, § 78-15-4 through -6, read as follows:

78-15-4. Prayer for damages.—No dollar amount shall be specified in the prayer of a complaint filed in a product liability action against a product manufacturer, wholesaler, or retailer. The complaint shall merely pray for such damages as are reasonable in the premises.

78-15-5. Alteration or modification of product after sale as substantial contributing cause—Manufacturer or seller not liable.—No manufacturer or seller of a product shall be held liable for any injury, death or damage to property sustained as a result of an alleged defect, failure to warn or protect or failure to properly instruct, in the use or misuse of that product, where a substantial contributing cause of the injury, death or damage to property was an alteration or modification of the product, which occurred subsequent to the sale by the manufacturer or seller to the initial user or consumer, and which changed the purpose, use, function, design or intended use or manner of use of the product from that for which the product was originally designed, tested or intended.

78-15-6. Defect or defective condition making product unreasonably dangerous—Rebuttable presumption.—In any action for damages for personal injury, death, or property damage allegedly caused by a defect in a product:

(1) No product shall be considered to have a defect or to be in a defective condition, unless at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer.

(2) As used in this act, "unreasonably dangerous" means that the product was dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer or user of that product in that community considering the product's characteristics, propensities, risks, dangers and uses together with any actual knowledge, training, or experience possessed by that particular buyer, user or consumer.

(3) There is a rebuttable presumption that a product is free from any defect or defective condition where the alleged defect in the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were in conformity with government standards established for that industry which were in existence at the time the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were adopted.