**SUN VALLEY WATER BEDS OF UTAH, INC.; F.B.B. Enterprises, a partnership; and Frank Imbrie, Plaintiffs and Appellants,**

v.

**HERM HUGHES & SON, INC., Defendant and Appellee.**

No. 860304.

Supreme Court of Utah.

Sept. 29, 1989.

Merlin O. Baker, Salt Lake City, James T. Ferrini and Peter M. Katsaros, Chicago, Ill., for plaintiffs and appellants.

Roger H. Bullock and Stephen J. Trayner, Salt Lake City, for defendant and appellee.

HALL, Chief Justice:

Sun Valley Water Beds of Utah, Inc., F.B.B. Enterprises, and Frank Imbrie (collectively "Sun Valley") sought reimbursement for property damages sustained when the roof of its ten-year-old building in Ogden, Utah, partially collapsed. Herm Hughes & Son, Inc. ("Hughes") was the building's general contractor. Hughes moved for summary judgment on the ground that Sun Valley's claims were time-barred by Utah's architects and builders statute of repose, which bars claims of injury to persons or property brought more than seven years after completion of construction. Its motion was granted. Sun Valley appeals, claiming that the architects and builders statute of repose violates (1) the open courts provision of the Utah Constitution,[1] (2) the equal protection guarantees of the United States and Utah Constitutions,[2] (3) the Utah constitutional prohibition against special legislation,[3] and (4) the United States and Utah constitutional guarantees of due process.[4]

---

1. Utah Const. art. I, § 11.

2. U.S. Const. amend. XIV; Utah Const. art. I, § 24.

3. Utah Const. art. VI, § 26.

4. U.S. Const. amend. XIV; Utah Const. art. I, § 7.

Statutes of repose are related to statutes of limitations; both prescribe time periods within which plaintiffs must bring suits. Their operation, however, is different. A statute of limitations precludes suit a legislatively imposed number of years after the accrual of a cause of action. A statute of repose bars suit a specified number of years after the occurrence of a particular event without regard to the date of the accrual of the cause of action.[5] In *Berry ex rel. Berry v. Beech Aircraft*,[6] we noted that "a statute of repose may bar the filing of a lawsuit even though the cause of action did not ... arise until after it was barred and even though the injured person was diligent in seeking a judicial remedy."[7] Utah's architects and builders statute of repose bars suits seven years after completion of construction, which in this case was three years before the collapse of Sun Valley's roof.

Proponents of architects and builders statutes of repose generally claim that the statutes protect the construction industry from perpetual liability, limit stale claims and nuisance suits, and control the insurance crisis that embroils architects and builders.[8] Statutes of repose promote the public goal of certainty and finality in the administration of commercial transactions and terminate liability at a set time. With-out a statute of repose, architects and builders might be subject to potential liability for the life of their buildings—a period that could last well into—and beyond—an architect's or a builder's retirement. The statutes protect defendants from stale claims that are often difficult to defend since evidence may be lost or destroyed, witnesses might become unavailable, and technology might advance, creating a higher standard of proof at trial than existed at construction. Architects and builders statutes of repose also help control runaway insurance costs.[9] In the absence of statutes of repose, insurers must maintain reserves to cover potential claims for several years, if not decades, into the future. The cost of maintaining reserves is recouped through higher premiums. Statutes of repose eliminate the need for these infinite reserves by cutting off a defendant's liability after a given number of years.

Statute detractors counter that (1) a plaintiff's claim should not be abrogated because of an industry's interest in avoiding liability, (2) a claim cannot logically be "stale" before it accrues[10] and it should not be cut off before it exists,[11] (3) statutes of repose are not aimed at barring nuisance suits, but at barring all claims, legitimate and otherwise,[12] (4) all litigants' cases suf-

---

**5.** See *Berry ex rel. Berry v. Beech Aircraft*, 717 P.2d 670, 672 (Utah 1985). References to "statutes of limitations" in cited material should not confuse the reader since many courts and commentators do not distinguish between statutes of limitations and repose.

**6.** 717 P.2d 670.

**7.** *Id.* at 672.

**8.** See generally Note, *The Constitutionality of Statutes of Repose: Federalism Reigns*, 38 Vand. L.Rev. 627, 632–35 (1985) [hereinafter *Statutes of Repose*], and sources cited therein; Note, *Architectural Malpractice: Toward an Equitable Rule for Determining When the Statute of Limitations Begins to Run*, 16 Fordham Urb. L.J. 509, 518–20 (1988), and cases cited therein.

**9.** See generally Note, *People Who Live In Glass Houses Should Not Build In Vermont: The Need For a Statute of Limitations for Architects*, 9 Vt.L.Rev. 101, 130 (1984) [hereinafter *Statute of Limitations for Architects*].

**10.** See *Statutes of Repose*, 38 Vand.L.Rev. at 633, and sources cited therein.

**11.** Except in a topsy-turvy land, you can't die before you are conceived, or be divorced before ever you marry, or harvest a crop never planted, or burn down a house never built, or miss a train running on a non-existent railroad. For substantially similar reasons, it has always heretofore been accepted, as a sort of legal "axiom," that a statute of limitations does not begin to run against a cause of action before that cause of action exists, i.e., before a judicial remedy is available to the plaintiff.
*Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir.1952) (Frank, J., dissenting) (footnote omitted), *quoted in* W.P. Keeton, *Prosser & Keeton On Torts* § 30 n. 13, at 166 (5th ed. 1984).

**12.** In *Berry*, concerning Utah's product liability statute of repose, we noted:
[The products liability statute of repose] is not aimed at abolishing nuisance suits; on the contrary, its purpose, as shown below, is to bar injured plaintiffs' judicial remedies in wholly meritorious cases. The immunity granted is not related to the degree of the

fer with the passage of time; but while plaintiffs and defendants *both* must find lost evidence and old witnesses and deal with changing standards, the plaintiff carries the additional burden of proving his or her claim,[13] (5) statutes of repose do nothing to change insurance rates;[14] the number of claims brought after the seventh year from completion are insignificant and have little or no effect on premiums;[15] and (6) statutes of repose violate a plaintiff's right to address his or her grievance in court, and they abrogate the public policy of holding tortfeasors liable for their actions.[16]

A majority of jurisdictions have adopted architects and builders statutes of repose that have apparently passed constitutional muster.[17] The typical statute of repose allows the plaintiffs generally seven to ten years to bring suit after completion of construction, acceptance, or first use of the structure.[18] Some statutes allow persons injured near the end of the statutory time limit a grace period in which to bring suit.[19] Some distinguish between patent and latent defects and allow a longer period in which

to bring claims for latent defects.[20] Other statutes simply require claims for latent defects to be brought within a set time after discovery of the defect, no matter the length of time after completion of the improvement.[21] Still others waive application of the statutes in instances of willful misconduct or fraudulent concealment.[22] Utah's statute of repose is drafted more narrowly than many others. It states in part:

> No action to recover damages for any injury to property, real or personal, or for any injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction, or construction of such improvement to real property more than seven years after the completion of construction.[23]

Statutes of repose are generally challenged on the grounds that they violate

---

> manufacturer's culpability in placing a defective product in the stream of commerce. Thus, the immunity is not limited to actions based on strict liability, but extends also to actions based on negligence, gross negligence, recklessness, willful misconduct, and even intentional misconduct, such as a manufacturer's intentional failure to warn of *known* dangerous defects that could cause widespread injury or death.
>
> 717 P.2d at 673 (emphasis in original).

**13.** *Statutes of Repose*, 38 Vand.L.Rev. at 633–34.

**14.** *Id.* at 634.

**15.** To show the reasonableness of Utah's statute of repose Hughes cites figures which indicate that 97.9 percent of all claims against architects are brought within seven years after completion of construction. *See* C.H. Collins, *Limitation of Action Statutes for Architects and Builders—An Examination of Constitutionality*, 29 Fed'n Ins. Couns.Q. 41, 47–48 (1978). However, the figures Hughes cites are double-edged. If so few claims are brought against the industry after seven years, its burden in defending—or insuring against—those claims should be slight compared to the loss a plaintiff might suffer as a result of an architectural or construction defect.

**16.** *See Statutes of Repose*, 38 Vand.L.Rev. at 655–56.

**17.** *See Horton v. Goldminer's Daughter*, No. 870031, slip op. at 6, 7–9 & n. 3 (Utah Sept. 29, 1989).

**18.** *See* Appendix to *Statute of Limitations for Architects*, 9 Vt.L.Rev. at 143–59.

**19.** *See, e.g.,* Colo.Rev.Stat. § 13–80–104(2) (1987); Ill.Rev.Stat. ch. 110, ¶ 13–214(b) (Cum. Supp.1989).

**20.** *See, e.g.,* Cal.Civ.P.Code §§ 337.1, 337.15 (West 1982). Section 337.1(e) defines a patent defect as a "deficiency which is apparent by reasonable inspection." Section 337.15(2)(b) defines a latent defect as "a deficiency which is not apparent by reasonable inspection."

**21.** *See* Fla.Stat. § 95.11(3)(c) (1987); Neb.Rev. Stat. § 25–223 (1985).

**22.** *See, e.g.,* Cal.Civ.P.Code § 337.15(2)(f) (West 1982).

**23.** Utah Code Ann. § 78–12–25.5 (1987) (amended 1988). The provisions of the statute of repose applicable at the time this case was initi-

equal protection, due process, and open courts guarantees.[24] Grounds for equal protection challenges include the claim that the statutes treat plaintiffs injured by improvements to real estate differently than plaintiffs injured by other means and that plaintiffs injured by newer improvements are treated differently than those injured by defects in older improvements. Defendants also complain because the statutes allegedly create arbitrary and unreasonable distinctions between classes of defendants since some involved in the building process are protected (e.g., architects and builders) while others are not (e.g., materialmen, engineers, and owners). The due process argument is essentially that the statutes deny plaintiffs their right to sue. Arguments for due process and open courts challenges are closely related.[25] The latter argument contemplates that statutes of repose deny open access to the judicial process, arbitrarily depriving plaintiffs "of effective remedies designed to protect basic individual rights." [26]

We first deal with the constitutionality of Utah Code Ann. § 78–12–25.5 under the open courts provision of the state constitution. Utah's open courts provision, section 11 of the constitution's Declaration of Rights, states:

All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.[27]

The legislature may create, define, and modernize the law.[28] However, it does not have unbridled power to deny to contemporary plaintiffs their existing common law rights and remedies.[29] As we noted in *Berry:*

[T]he basic purpose of Article I, section 11 is to impose some limitation on [the legislature's power to create new, and abrogate old, rules of law] for the benefit of those persons who are injured in their persons, property, or reputations since they are generally isolated in society, belong to no identifiable group, and rarely are able to rally the political process to their aid.[30]

At the same time, section 11 does not enjoin the legislature from constricting some causes of action. "[L]egal causes of action which provide remedies that protect section 11 interests may, in some cases, have to yield to the power of the Legislature to promote the public health, safety, morals, and welfare." [31]

To facilitate the legislative interest in promoting the social and economic welfare of the populace and to protect the individual's section 11 constitutional right to a remedy for his or her injury, this Court has adopted a two-part test to determine the section 11 constitutionality of a challenged law. "First, section 11 is satisfied if the law provides an injured person an effective and reasonable alternative remedy 'by due course of law' for vindication of his constitutional interest." [32] If the legislature abrogates one remedy, it must create another.

The benefit provided by the substitute must be substantially equal in value or other benefit to the remedy abrogated in providing essentially comparable sub-

ated are substantially identical to those in the 1988 amendment.

24. See generally Statutes of Repose, 38 Vand.L. Rev. at 635–48.

25. See Berry, 717 P.2d at 675, 679; Statutes of Repose, 38 Vand.L.Rev. at 645.

26. Berry, 717 P.2d at 675.

27. Utah Const. art. I, § 11.

28. Berry, 717 P.2d at 676.

29. See id. at 676 & n. 3.

30. Id. at 676 (citation omitted); see also Condemarin v. University Hospital, 775 P.2d 348, 367–68 (Utah 1989) (Zimmerman, J., concurring in part) (interest group politics will not always protect common law right of citizens to obtain redress for injuries).

31. Berry, 717 P.2d at 677 (footnote omitted).

32. Id. at 680.

stantive protection to one's person, property, or reputation, although the form of the substitute remedy may be different.[33]

Second, if the legislature fails to provide a substitute or alternative remedy

abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective.[34]

■ The initial question to be dealt with then is whether Utah's architects and builders statute of repose provides Sun Valley with a substitute or alternative remedy. Hughes claims that Sun Valley has alternative remedies not affected by Utah Code Ann. § 78–12–25.5 since other defendants (e.g., suppliers, manufacturers, and engineers) are available to be sued. We recognize that Sun Valley has claims against other defendants, but alternative claims are to be distinguished from substitute or alternative remedies. First, that Sun Valley fortuitously has alternative causes of action against other defendants does not mean that Utah Code Ann. § 78–12–25.5 provides Sun Valley with an alternative remedy for injuries it sustained due to the negligent acts of Hughes. Having an alternative claim against another defendant is different from having an alternative remedy in an existing action. Second, when the legislature removes a particular right or remedy, it cannot simply rely on other preexisting rights or remedies to fill the void left behind, but must rather provide a *quid pro quo* in the form of either a substitute remedy for the individual or the removal of a perceived social or economic evil for society. For example, in the Workmen's Compensation Act, the Occupational

Disease Act, and the Utah No–Fault Automobile Insurance Act the legislature provided individual plaintiffs with substitute remedies.[35] On the other hand, in the Married Women's Act of 1898, it eliminated what may have been an "existing social evil."[36] The architects and builders statute of repose does not supply an alternative remedy and, as seen below, does not eliminate a clear social evil. Granted, " 'no one has a vested right in any rule of law,' "[37] but as is explained in *Berry* that means that

neither the due process nor the open courts provision constitutionalizes the common law or otherwise freezes the law governing private rights and remedies as of the time of statehood.... However, once a cause of action under a particular rule of law accrues to a person by virtue of an injury to his rights, that person's interest in the cause of action and the law which is the basis for a legal action becomes vested, and a legislative repeal of the law cannot constitutionally divest the injured person of the right to litigate the cause of action to a judgment.[38]

The same is true here. The legislature cannot simply do away with Sun Valley's cause of action and its accompanying remedy without creating a comparable substitute.

Hughes cites *Good v. Christensen*[39] for the proposition that a person with claims arising from a defect in a structure has the possibility of alternative remedies from other defendants. Besides the fact that *Good* overlooks the distinction between alternative claims and alternative remedies, it provides no analysis of the constitutional issues raised. That decision has little persuasive effect here. In *Payne ex rel. Payne v. Myers*,[40] this Court held in part

**33.** *Id.* (citations omitted).

**34.** *Id.* (citations omitted).

**35.** *See id.* at 677.

**36.** *See Cruz v. Wright*, 765 P.2d 869, 871 (Utah 1988).

**37.** *Berry*, 717 P.2d at 675 (quoting *Masich v. United States Smelting, Refining & Mining Co.*, 113 Utah 101, 124, 191 P.2d 612, 624, *appeal*

*dismissed*, 335 U.S. 866, 69 S.Ct. 138, 93 L.Ed. 411 (1948)).

**38.** *Id.* at 676 (footnote and citations omitted); see *Cruz*, 765 P.2d at 871.

**39.** 527 P.2d 223 (Utah 1974).

**40.** 743 P.2d 186 (Utah 1987).

that although Utah Code Ann. § 63–30–4 precluded the plaintiff's claim against a state employee for the employee's negligence, article I, section 11 was not violated because liability for that negligence was shifted to the state. The plaintiffs in *Payne* had a remedy against the state for the negligent acts of state employees.[41] The architects and builders statute of repose, however, provides no alternative remedy for the negligent acts of architects and builders.

Having established that the architects and builders statute of repose does not provide an injured person with an effective and reasonable alternative remedy for vindication of his or her constitutional interest, we must next determine whether (1) abrogation of the remedy is justified by the elimination of a clear social or economic evil and (2) removal of a plaintiff's remedy is not an arbitrary or unreasonable means for achieving that end.

The products liability statute of repose found unconstitutional in *Berry* contained a provision declaring its purpose and objective.[42] The architects and builders statute of repose does not contain a similar provision. However, transcripts from the Senate and House floor debates indicate that sponsors of the law felt that it would limit stale claims and protect the construction industry from perpetual liability. As the House sponsor summarized, "[W]e feel that the 7–year time test is adequate to protect the public in this case and give repose and relief to the peaceful attitude of the designer."

We recognize that perpetual liability for defective and unsafe improvements to property may cause architects and builders to suffer some anxiety. However, we do not believe that abrogation of an individual's section 11 constitutional right is a rea-sonable way to provide for an industry's peace of mind. We simply cannot justify a policy favoring an architect's or builder's economic interest in avoiding liability over a plaintiff's economic interest in recovering damages. While the passage of time causes inherent difficulty in defending any lawsuit, it also causes equal, if not greater, difficulty in initiating just legal action. If Hughes' defective or unsafe improvements caused damage, then the mere passage of time should not excuse Hughes from liability for its negligence.

In *Berry*, we enumerated several reasons why the products liability statute of repose was unconstitutional.[43] The purposes behind the architects and builders statute of repose are not as well defined as those behind the products liability statute of repose, but even assuming greater purposes behind the former, it is not saved from portions of *Berry*'s rationale. One, the statute does not protect the industry from a significant number of lawsuits since it appears that nationally only 2.1 percent of all claims are initiated subsequent to the seventh year from completion anyway.[44] Two, since the number of claims affected by the statute are insignificant, it is highly unlikely that lower insurance rates are inextricably tied to the existence of the architects and builders statute of repose.[45] Three, the statute of repose may be counterproductive in terms of public safety since the statute provides architects and builders with less incentive to take adequate precautions in the designing and building of improvements that have a useful life beyond seven years.[46] In sum, elimination of plaintiffs' cause of action under Utah Code Ann. § 78–12–25.5 (1989) (amended 1988) is arbitrary and unreasonable and does not achieve the statutory objective.

41. 743 P.2d at 190.

42. Utah Code Ann. § 78–15–2 (1987).

43. *See Berry,* 717 P.2d at 681–83.

44. *See supra* note 13; *Berry,* 717 P.2d at 681–82.

45. *Berry,* 717 P.2d at 682.

46. *Id.* at 683; *see also* R. Posner, *Economic Analysis of Law,* § 6.12, at 143 (1972), *quoted in Condemarin,* 775 P.2d at 364:

[The] economic function [of liability for negligence] ... is to deter uneconomical accidents. As it happens, the right amount of deterrence is produced by compelling negligent injurers to make good the victim's losses.

·For these reasons, we find Utah's architects and builders statute of repose unconstitutional under article I, section 11 of the Utah Constitution. This conclusion is congruous with the Court's decision in *Horton v. Goldminer's Daughter*,[47] also issued this day. Since this holding is dispositive of Sun Valley's claim, we do not address other issues raised.

Reversed and remanded.

HOWE, Associate C.J., ZIMMERMAN and DURHAM, JJ., and GREENWOOD, Court of Appeals Judge, concur.

STEWART, Justice, does not participate herein; GREENWOOD, Court of Appeals Judge, sat.