**MOR–FLO INDUSTRIES, INC. and Polaris Water Heaters, Petitioners,**

v.

**BOARD OF REVIEW OF the INDUSTRIAL COMMISSION, Respondent.**

No. 900510–CA.

Court of Appeals of Utah.

Aug. 2, 1991.

A. Robert Thorup, Ray, Quinney & Nebeker, Salt Lake City, and Richard S. Mitchell (argued), Goodman, Weiss & Freedman, Cleveland, Ohio, for petitioners.

James E. Harward, Benjamin A. Sims (argued), Indus. Com'n of Utah, Salt Lake City, for respondent.

Richard A. Steyer, Howe, Anderson & Steyer Association, Inc., Washington, D.C., for First Co., Inc., amicus curiae.

Kevin B. Belford, American Gas Ass'n, amicus curiae, Arlington, Va.

Ronald L. Rencher and Mark W. Dykes, LeBoeuf, Lamb, Leiby & MacRae, Salt Lake City, for State Industries, Inc., amicus curiae.

Joseph M. Mattingly, Gas Appliance Mfrs., Arlington, Va., for Gas Appliance Mfrs. Ass'n Inc., amicus curiae.

## OPINION

Before BILLINGS, ORME and RUSSON, JJ.

BILLINGS, Associate Presiding Judge:

Petitioners seek review of a decision of the Board of Review of the Industrial Commission (Commission) upholding an order issued by its safety division requiring the removal of Polaris water heating units. The safety division issued a final removal order on August 30, 1989, claiming the Polaris did not comply with the Utah Boiler Code. Following an evidentiary hearing, an administrative law judge (ALJ) upheld the removal order. The Commission affirmed and petitioners now seek review in this court. We reverse.

## FACTS

A building inspector for the safety division of the Commission visited Arlington Place Condominiums in February 1989 to inspect its Polaris water heating system. The Polaris units at issue are designed like most other water heaters, but utilize an additional pipe loop or coil to provide space heat when a fan blows air across the coil. After the water circulates through the additional loop or coil it is returned to the water heater where it is reheated. This arrangement allows the Polaris to provide both potable water and space heat, but

does not substantially modify the water heater. The Polaris is built to specifications required under Utah law for a water heater, but not to specifications required for a boiler.

The inspector determined that because the Polaris system provided both potable water and space heat, the Polaris was a "hot water heating boiler," covered by the Utah Boiler Code and the Commission's boiler and pressure vessel regulations. Because the Polaris units did not have the stamp of the American Society of Mechanical Engineers (ASME) required for boilers under the Utah Boiler Code, he ordered them removed.

In March 1989, the safety division sent a letter to Arlington Place ordering the units removed. The parties then entered into negotiations delaying a final decision. In August 1989, the division sent a final letter ordering the Polaris units removed within thirty days. Petitioner Mor–Flo Industries, Inc. (Mor–Flo), the manufacturer of the Polaris, challenged the order, but it was affirmed after an evidentiary hearing before an ALJ.

Ultimately, the Commission upheld the safety division's initial order and denied Mor–Flo's motion for review stating,

> The record clearly demonstrates, and [Mor–Flo] does not contest, that [Mor–Flo's] device is a functional hybrid. Besides supplying hot water, it is designed to provide heat to raise the air temperature of an enclosed space.... This functionally based categorization subjects a dual-function device to regulation for each function it fulfills.

## STANDARD OF REVIEW

On appeal, Mor–Flo contends the Polaris is a hot water heater exempt from regula-tion under the ASME, incorporated into Utah law through the Utah Boiler Code. Mor–Flo argues that the Polaris complies with the standards required by the American National Standards Institute (ANSI) and incorporated into the Uniform Plumbing Code which has been statutorily adopted in Utah and which is regulated by the Department of Health. The Commission responds that the Polaris is a functional hybrid used to provide heated potable water and space heating and therefore is subject to regulation as both a water heater and a boiler.

We must decide whether the Commission correctly concluded the Polaris combination unit must meet the requirements for a boiler under the Utah Boiler Code. *See* Utah Code Ann. § 35–7–5 to –9 (1988 & Supp. 1991). Petitioners contend the issue is one of law and thus we should review the Commission's determination for correctness without affording any deference. Respondents argue for an intermediate standard of reasonableness and rationality because of the Commission's special expertise.

Proceedings commenced after January 1, 1988 are governed by the Utah Administrative Procedures Act (UAPA), Utah Code Ann. §§ 63–46b–1 to –22 (1989). In *Pro–Benefit Staffing v. Board of Review*, 775 P.2d 439, 442 (Utah App.1989), this court held that the intermediate standard of review of reasonableness, previously applied by the Utah Supreme Court to judicial review of an agency's determination of mixed questions of fact and law or to an agency's "interpretation of the operative provisions of the statutory law it is empowered to administer," *id.* (quoting *Utah Dep't. of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983)), was consistent with section 63–46b–16(4)(d) of the UAPA.[1] However, the Utah Supreme

---

1. In *Utah Dep't of Admin. Servs.*, the supreme court elaborated upon the intermediate or reasonable and rational standard of review. 658 P.2d at 611. The rationality aspect of the intermediate standard was described as "a matter of logic or completeness, such as when the question is whether the Commission's findings of fact support its conclusion," or whether a particular course of action is a rational means of achieving a known policy goal. *Id.* Where an agency decision involves interpretation of a special law, application of factual findings to conclusions or "ultimate facts," or balancing of competing values to select a certain goal a reviewing court makes an independent judgment of the reasonableness of the agency decision. *Id.* On the other hand, "reasonableness must be determined with reference to the specific terms of the underlying legislation, interpreted in light of its evident purpose as revealed in the legisla-

Court recently reached a different conclusion in *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581 (Utah 1991).

In *Morton Int'l*, the supreme court conducted an in-depth analysis of the effect of section 63–46b–16(4)(d) of UAPA [2] on the standard of review for administrative interpretations of statutes within an agency's area of expertise. The court recognized its holding in *Savage Industries Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 668–71 (Utah 1991) that section 63–46b–16(4)(d) suggests a correction of error standard of review when the court reviewing statutory construction is in as good a position as the agency to interpret the statute and indicated that "a court may decide that the agency has erroneously interpreted the law if the court merely disagrees with the agency's interpretation." *Morton Int'l*, 814 P.2d at 587 (quoting *Savage Industries*, 811 P.2d at 669–70) (quoting Model State Admin.Procedure Act § 5–116, 15 U.L.A. 127–30 (1981)).

In *Morton Int'l*, the court acknowledged that UAPA did not change the applicable standard of review where the agency has been granted discretion, but the court noted that, "nothing in the language of section 63–46b–16 or its legislative history suggests that an agency's decision is entitled to deference solely on the basis of agency expertise or experience." *Morton Int'l*, 814 P.2d at 587. The court concluded that "absent a grant of discretion, a correction-of-error standard is used in reviewing an agency's interpretation or application of a statutory term." *Id.* at 587–589.

■ The *Morton Int'l* court indicated that this conclusion regarding the standard of judicial review may not significantly af-

fect review of agencies' interpretations and applications of their own statutes because often where a court would summarily grant an agency deference because of its expertise, it is also appropriate to grant the agency deference on the basis of an explicit grant of discretion, *id.* at 589, or on the basis of statutory language suggesting the legislature left the specific issue unresolved. *Id.* Where legislative intent can be discerned, the agency's interpretation is given no deference, but where legislative intent is not discernible, the determination is one of policy and the agency is given deference. *Id.*

We need not review the Boiler Code in depth, nor refer to legislative history to determine whether to apply a correction of error or a reasonableness standard of review in this case, as we have concluded that, even utilizing the more deferential intermediate standard, the Commission's interpretation of the Boiler Code was not reasonable.

## REGULATION OF POLARIS UNDER UTAH BOILER CODE

■ The Commission's safety division contends the Polaris is a hot water heating boiler regulated by the Commission under the Utah Boiler Code and the specifications contained in the ASME. However, the Commission admits that no provision in the ASME specifically addresses water heaters which provide both potable hot water and space heat, the latter by way of air blown across an additional loop or coil of pipe. In fact, the only reference to such a hybrid is in the ANSI standards utilized by the Uniform Plumbing Code, incorporated into Utah law and administered by the Utah Department of Health.[3]

tive history and in light of the public policy sought to be served." *Id.* The court noted that a reviewing court should not substitute its "preferences for the policy judgments of the commission." *Id.*

**2.** Section 63–46b–16(4)(d) provides: "The appellate court shall grant relief only if on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following ... the

agency has erroneously interpreted or applied the law...."

**3.** The addenda to ANSI Z21.10.1 (1987) standards specifically mention a "water heater suitable for water (potable) heating and space heating." *Id.* at 1.30.6.

Mor–Flo contends the Polaris combination unit is more specifically referred to in the ANSI standards applicable in Utah pursuant to the Uniform Plumbing Code (1988) incorporated

The ASME Code does carefully delineate the characteristics of commercial water heaters to distinguish them from boilers.[4] *See* ASME Code, Section IV, Part HLW (1986 & 1988 addenda). The 1988 addenda sets forth the following differences in applicable criteria for water heaters versus hot water heating boilers:

(a) In a water heater, the temperature of the water is limited to a maximum of 210°F. (b) A water heater is provided with a corrosion resistant lining or constructed with corrosion resistant materials. (c) A water heater is intended to supply potable hot water with 100% makeup from a potable water supply system. Therefore, certain controls and indicating instruments, such as a water level indicator, low and high water cutoffs, and pressure and altitude gages, are not necessary on a water heater. Vessels built under the rules of Part HLW may be used for storage of potable water.

The Polaris combination unit satisfies all three of the above statutory requirements for a water heater. It is also important to note that the ASME Code does not include a space heating function as a criteria for distinguishing a water heater from a hot water heating boiler.

Mor–Flo also calls our attention to the Utah Boiler and Pressure Vessel Rules and Regulations, part I, section 6(m) (1988) to support its argument that the Polaris unit continues to satisfy the definitional requirements of a residential water heater and is thus exempt from regulation by the Commission.[5] Section 6(m) defines a water heater as follows:

A closed vessel in which water is heated by the combustion of fuels, electricity, or any other source and withdrawn for use external to the system at pressures not exceeding 160 psig and shall include all controls and devices necessary to prevent water temperatures from exceeding 210 degrees F.

Again, it is undisputed that the Polaris meets these requirements. Further, nothing in the definition expressly or impliedly states that a water heater cannot be used for space heating. In fact, section IV, part HLW–100 of the 1986 version of the ASME Code expressly defined the scope of the provisions dealing with commercial water heaters as encompassing, "water heaters supplying potable hot water for commercial purposes *other than space heating.*" The 1986 addenda deleted the section distinguishing general water heaters from water heaters providing space heating thus implying that hot water heaters that provide space heating are nevertheless hot water

---

into Utah law through Utah Code Ann. §§ 26–15–3 (1990) and 58–56–4 (Supp.1991) and the Polaris is in compliance with the ANSI standards. Although the Commission argues that these statutes were not in effect until after the initial letter was sent to Arlington Place, we note that Mor–Flo appeals only from the final letter determination requiring removal of the units dated August 1989, after the effective date of the statutes, and thus we do not find the Commission's argument persuasive.

**4.** While commercial water heaters are addressed in part HLW of the ASME Code, residential size water heaters are expressly excluded. The Commission claims the distinguishing feature argument based on the features outlined in part HLW–101 is not helpful to Mor–Flo's position because the Polaris is a residential unit and therefore exempt from part HLW of the ASME Code. We believe the characteristics are still useful in distinguishing a boiler from a hot water heater whether it is commercial or residential. Furthermore, this approach is not helpful to the Commission because it concedes

that residential water heaters are exempt from regulation under the ASME Code.

**5.** The standards for design and construction set forth in the ASME Code, incorporated into the Utah Boiler Code by Utah Code Ann. § 35–7–6, exempt residential size water heaters that do not exceed the following: (1) heat input of 200,000 BTU/hr; (2) water temperature of 210°F; (3) nominal water-containing capacity of 120 gallons. *See* ASME Code, section IV, part HLW–101 (1986).

The Commission has also promulgated rules and regulations pertaining to boilers and pressure vessels. Part II, section 16 sets forth units that are exempt from the rules and subsection (i) provides: "HOT WATER SUPPLY BOILERS, WATER HEATERS, INCLUDING LINED POTABLE WATER HEATER when none of the following limitations are exceeded: (1) a heat input of 200,000 Btu/hr. (2) a water temperature of 210 degrees F. (3) a water-containing capacity of 120 gallons." Utah Boiler and Pressure Vessel Rules and Regulations (1988).

heaters covered under part HLW of the ASME Code if commercial in size and exempt from the code if residential in size.

The Commission counters that the Polaris is more appropriately considered a hot water heating boiler under Utah Boiler and Pressure Vessel Rules and Regulations, part I, section 6(j). Section 6(j) provides:

HOT WATER HEATING BOILER means a boiler in which no steam is generated, from which hot water is circulated for heating purposes and then returned to the boiler, and which operates at a pressure not exceeding 160 psig and/or at temperatures of 250 degrees F. at or near the boiler outlet.

The Commission specifically relies on the language "hot water is circulated for heating purposes" to support its argument that the Polaris is a hybrid and subject to regulation as a boiler under the Utah Boiler Code.[6]

We are not persuaded by the Commission's argument. The Commission relies solely on the functional language of the definition removing it from its context. We note that the ASME Code is designed to require minimum construction specifications for hot water boilers to protect the public. It is a construction, not a function code.

The purpose of the Utah Boiler Code is to insure the safety of those dealing with boilers. The key construction difference between a water heater and a hot water heating boiler under the Utah Boiler Code is the maximum allowable water temperature. Water heaters are limited to 210 degrees F, which falls below the boiling point, while hot water heating boilers are permitted to operate at temperatures up to 250 degrees F, well above the boiling point. The Polaris units operate at temperatures below 210 degrees F, and, unlike a hot water heating boiler, do not have the capacity to reach the boiling point and contain safety devices to keep temperatures below 210 degrees F. When the Polaris combination unit is used to provide space heat, it does not operate at a temperature any higher than when it is used only for potable water, but simply circulates hot water at its normal temperature through a coil.

Thus, there is no safety need to regulate such units under the more stringent boiler construction regulations when water heaters are already regulated for safety purposes by the Department of Health. The Commission concedes that it has been unable to identify any safety concerns with the Polaris.

We base our decision that the Polaris combination units are exempt from regulation under the Utah Boiler Code as water heaters on a number of factors. First, the Polaris meets the definition of a hot water heater exempt under the ASME Code and the Utah Boiler Rules and Regulations and it is not transformed into a boiler merely by the addition of a space heating function.[7] Furthermore, it is undisputed that the Utah Boiler Code and associated rules contain no construction standards applicable to combination units such as the Polaris. It would be absurd to require the Polaris to meet ASME requirements when there are no specific construction requirements for combination units. As matters stand, the only way the Polaris could "comply" with the boiler code is if it were replaced by a boiler.

---

6. The Commission repeatedly argues the Polaris is a hybrid and thus subject to regulation under the Utah Boiler Code. We are reminded of Abraham Lincoln's statement that "calling a horse's tail a leg does not make it a leg." *Boards of Educ. of the Granite, Murray City, Jordan and Salt Lake City School Districts v. Salt Lake County Comm'n,* 749 P.2d 1264, 1271 n. 2 (Utah 1988) (Howe, J., concurring and dissenting).

7. It is undisputed in the record that the ASME specifically rendered its opinion in a letter that

the addition of a recirculating loop to a water heater did not transform the water heater into a boiler and bring it within the code. Although the addition of a space heating function is not exactly the same, the equipment added to the water heater is substantially the same. There is additionally a fan or blower used to move air, but this equipment is distinct from the water heater and its presence does not somehow convert what is otherwise a recirculating water heater into a boiler.

Second, as discussed above, section IV, part HLW–101 of the 1986 version of the ASME Code distinguished between hot water heaters generally and those which provided space heating. The 1986 addenda deleted the section distinguishing general water heaters from water heaters providing space heating. The deletion of the language distinguishing water heaters used for space heating indicates an intention to include such water heaters under the section specifically addressing water heaters, not the section addressing boilers, and to exempt them altogether from the Boiler Code if they are of residential size.

Third, the Commission does not allege that the Polaris poses any kind of safety risk. The Commission's inspector did not identify any safety concerns regarding the Polaris. The purpose of the Utah Boiler Code is to promote the safety of the public by allowing the Commission to regulate boilers and pressure vessels for safety reasons. Accordingly, exempting the Polaris from regulation under the Utah Boiler Code does not defeat the purpose of the statutory scheme as the unit is incapable of reaching boiling temperatures and fits more narrowly under the definitional requirements for a water heater. The Polaris will be regulated for safety by the Department of Health as it is a residential size hot water heater subject to ANSI standards.

In conclusion, we conclude the Commission's determination that the Polaris combination unit was a hybrid unit subject to regulation as a boiler under the Utah Boiler Code must be reversed. The Commission's order that Arlington Place remove the Polaris units is therefore vacated.

ORME and RUSSON, JJ., concur.