Sadie VELARDE, spouse of Nicanor Velarde, deceased, Petitioner,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH; and Kennecott Copper Corporation, Respondents.

No. 910484–CA.

Court of Appeals of Utah.

April 14, 1992.

James R. Black (argued), Susan Black, Callister, Duncan & Nebeker, Salt Lake City, for petitioner.

James M. Elegante (argued), Howard C. Young, Parsons, Behle & Latimer, Salt Lake City, for respondent Kennecott Copper.

Benjamin A. Sims, Thomas C. Sturdy, Indus. Com'n of Utah, Salt Lake City, for respondent Indus. Com'n.

Before BILLINGS, JACKSON and RUSSON, JJ.

JACKSON, Judge:

Petitioner, Sadie Velarde, appeals the action of the Industrial Commission (the Commission) dismissing her claim for death benefits under the Utah Occupational Disease Act (the Act),[1] on the basis that the statute under which her claim was denied is an unconstitutional statute of repose. We reverse and remand.

## FACTS [2]

On March 24, 1982, after almost nine years as an employee of respondent, Kennecott Copper Corporation (Kennecott), petitioner's husband, Nicanor Velarde took medical retirement.[3] The cause of Mr. Velarde's retirement was rheumatoid arthritis. However, at Kennecott, Mr. Velarde had worked in various positions which exposed him to silicon dioxide. At the time of his retirement Mr. Velarde was experiencing some symptoms of silicosis, a lung disease caused by inhaling silicone dioxide dust. Subsequently, in July of 1982 and May of 1983, Mr. Velarde was diagnosed as having symptoms consistent with silicosis. Apparently unaware that this diagnosis gave him a cause of action under the Act, Mr. Velarde failed to file a claim with the Commission until January 9, 1986. Supporting Mr. Velarde's claim, Dr. Mark Shockey presented a formal diagnosis of silicosis and, in correspondence to the Commission, expressed the opinion "that at least part of the exposure occurred during [Mr. Velarde's] employment for Kennecott Copper."

Without making a finding on the merits, the administrative law judge (ALJ) dismissed Mr. Velarde's claim on the basis that Mr. Velarde had failed to comply with the statute of limitations of Utah Code Ann. § 35-2-48 (1988), which requires a filing with the Commission no later than one year after the cause of action arises. The ALJ ruled that Mr. Velarde's cause of action for occupational disease benefits arose no later than October of 1983, more than one year prior to the filing in January of 1986. The Commission affirmed the dismissal, and Mr. Velarde did not appeal further. During this administrative process, Mrs. Velarde made no appearance nor did anyone appear in her behalf.

On January 13, 1990, after a stay in the hospital, Mr. Velarde died. Both the Death Summary and the Certificate of Death listed silicosis as a contributory cause of death. On September 7, 1990, Mrs. Velarde filed with the Commission a claim for death benefits under the Act. The ALJ dismissed the claim, as required by Utah Code Ann. § 35-2-13(b)(3) (1988), on the basis that Mr. Velarde's death from silicosis occurred more than three years after the date of Mr. Velarde's last employment with Kennecott. The Commission subsequently denied Mrs. Velarde's Motion for

---

1. At the time of this filing, the name of the Act was the Utah Occupational Disease Disability Law. The name change does not, of itself, affect the substance of our analysis.

2. Because this case was dismissed without a hearing on the facts, we presume, to the extent necessary to resolve the issues on appeal, that the facts are as stated by petitioner, Mrs. Velarde. See Wrolstad v. Industrial Comm'n, 786

P.2d 243, 244 n. 2 (Utah App.), cert. denied, 795 P.2d 1138 (Utah 1990).

3. Prior to Mr. Velarde's employment at Kennecott, he had worked for nineteen years for United States Smelting and Refining as an underground miner of lead and zinc, and for two years in Wyoming as an underground coal miner.

Review. Mrs. Velarde then appealed to this court.

## ISSUES ON APPEAL

Mrs. Velarde asserts that Utah Code Ann. § 35–2–13(b)(3)(a) (1988) violates the Utah Constitution's open courts provision and deprives her of her right to equal protection under the United States and the Utah Constitutions. Section 35–2–13(b)(3)(a) allows no silicosis death benefits to surviving dependents "unless the death results within three years from the last day upon which the employee actually worked for the employer against whom compensation is claimed, except ... [when] death results during a period of continuous total disability from silicosis for which compensation has been paid or awarded." Mrs. Velarde claims this is an unconstitutional statute of repose because it deprived her of her cause of action before the claim for death benefits actually arose. As part of this assertion, she maintains that because her cause of action did not arise until Mr. Velarde's death, she cannot now be penalized by being denied death benefits based on Mr. Velarde's failure timely to assert his right to disability compensation. Kennecott responds that the statute of repose is not unconstitutional because Mrs. Velarde's right to disability compensation commenced with her husband's, so she had the alternative remedy of seeking Mr. Velarde's disability compensation herself. Kennecott further reasons that in any case, the statute of repose passes constitutional muster because it has a clear public policy legislative purpose and the means are finely tuned to that purpose.

## STANDARD OF REVIEW

■ The Utah Administrative Procedures Act[4] permits us to grant relief if Mrs. Velarde has been substantially preju-

diced because the Commission "has erroneously interpreted or applied the law," Utah Code Ann. § 63–46b–16(4)(d) (1989), or because "the agency action, or the statute or rule on which the agency action is based, is unconstitutional on its face or as applied." Utah Code Ann. § 63–46b–16(4)(a) (1989). Under section 63–46b–16(4)(d), we thus review for correctness the Commission's interpretation of when Mrs. Velarde's cause of action arose; we need not defer to the Commission's interpretation because the statute has not expressly or impliedly granted the Commission discretion on this issue. *Morton Int'l, Inc. v. Auditing Div. of the Utah State Tax Comm'n*, 814 P.2d 581, 587–89 (Utah 1991); *see also Mor-Flo Indus. v. Board of Review of Indus. Comm'n*, 817 P.2d 328 (Utah App.1991) (further explicating the *Morton* standard), *cert. denied*, —— P.2d —— (Utah 1992). Under section 63–46b–16(4)(a), we review the constitutionality of the statute upon which the Commission's action is based without deference, as a conclusion of law.[5] *See Amax Magnesium Corp. v. Utah State Tax Comm'n*, 796 P.2d 1256 (Utah 1990).

## THE STATUTE OF REPOSE AND THE OPEN COURTS PROVISION

■ Our primary inquiry on appeal is the constitutionality of the Act's statute of repose on claims for death benefits for death resulting from silicosis. Although a statute of repose is similar to a statute of limitations, the two operate differently. A statute of limitations precludes suit a statutorily specified number of years after a cause of action accrues. A statute of repose, on the other hand, prevents suit a statutorily specified number of years after a particular event occurs, without regard to when the cause of action accrues. *Sun Valley Water Beds v. Herm Hughes &*

---

**4.** The Utah Administrative Procedures Act governs all administrative proceedings commenced after January 1, 1988.

**5.** In this case, the Commission, deferring to this court, did not attempt a constitutional analysis. Dismissing the action, the ALJ stated:

> [I]t is beyond the jurisdiction of the Industrial Commission to rule on the applicant's constitutional claims in this matter. The [I]ndustrial Commission is not a forum of general jurisdiction, and accordingly, cannot interpret constitutional provisions. Rather, that task must be undertaken by the Utah Court of Appeals.

*Son, Inc.,* 782 P.2d 188, 189 (Utah 1989). Hence, a statute of repose may bar the filing of a lawsuit even though the cause of action did not arise until after the action was barred and although the injured person was diligent in seeking a remedy. *Berry ex rel. Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 672 (Utah 1985).[6] Although such statutes have passed constitutional muster in other states, *see Horton v. Goldminer's Daughter,* 785 P.2d 1087, 1091 n. 3 (Utah 1989), Utah courts have interpreted the open courts provision of the Utah Constitution to proscribe statutes of repose unless the statutes have certain redeeming characteristics. Utah's open courts provision states:

> All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

Utah Const. art. I, § 11. Although we may not apply section 11 "in a mechanical fashion to strike every statute with which there may be conflict," *Berry,* 717 P.2d at 680, the section imposes serious limits on the legislature's power to deny plaintiffs their existing common law rights and remedies.

> [The] basic purpose of Article I, section 11 is to impose some limitation on [the legislature's power to create new rules of law and abrogate old ones] for the benefit of those persons who are injured in their persons, property, or reputations since they are generally isolated in society, belong to no identifiable group, and

rarely are able to rally the political process to their aid.

*Id.* at 676. The supreme court has adopted a two-part test which contemplates both the individual rights constitutionally protected by the open courts provision and the legislative interest in promoting the social and economic welfare.

> First, section 11 is satisfied if the law provides an injured person an effective and reasonable alternative remedy "by due course of law" for vindication of his constitutional interest. The benefit provided by the substitute must be substantially equal in value or other benefit to the remedy abrogated in providing essentially comparable substantive protection to one's person, property, or reputation, although the form of the substitute remedy may be different. . . .
>
> Second, if there is no substitute or alternative remedy provided, abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective.

*Id.* at 680 (citations omitted). In the present case, the Act's statute of repose applying to death benefits provides in pertinent part:

> No compensation shall be paid for death from silicosis unless the death results within three years from the last day upon which the employee actually worked for the employer against whom compensation is claimed, except: (a) in those cases where death results during a period of continuous total disability from silicosis for which compensation has been paid or awarded. . . .

---

**6.** Cases in which statutes of repose have been held to be unconstitutional violations of the open courts provision include: *Wrolstad,* 786 P.2d at 243 (holding unconstitutional a statute of repose barring compensation for asbestosis one year after last working day under this Act); *Sun Valley Water Beds, Inc. v. Herm Hughes & Son, Inc.,* 782 P.2d 188 (Utah 1989); *Horton v. Goldminer's Daughter,* 785 P.2d 1087 (Utah 1989); *Stilling v. Skankey,* 784 P.2d 144 (Utah 1989) (per curiam); *Lichtefeld v. Cutshaw,* 784 P.2d 143 (Utah 1989) (per curiam) (holding in-

valid the architects' and builders' statute of repose); *Berry ex rel. Berry v. Beech Aircraft Corp.,* 717 P.2d 670 (Utah 1985) (holding unconstitutional a product liability statute of repose barring legal actions filed six years after sale or ten years after manufacture of a product, regardless of the product's useful life); *see also Condemarin v. University Hosp.,* 775 P.2d 348, 366 (Utah 1989) (holding unconstitutional the statutes limiting amount of damages recoverable against University Hospital, using *Berry* open courts analysis).

Utah Code Ann. § 35–2–13(b)(3) (1988). Because the statute limits compensation to deaths occurring within three years of the employee's last day of work and Mr. Velarde's death occurred over seven years after his last day of employment, Mrs. Velarde's action was unconstitutionally barred before it arose unless one of the two *Berry* exceptions applies.

### A. Alternative Remedy

■ Applying the *Berry* test, we first consider whether the law provides a substantially equal alternative remedy to the one prevented by the Act's statute of repose. In *Jackson v. Layton City*, 743 P.2d 1196 (Utah 1987), the supreme court held that plaintiffs who brought action against Layton City four and one-half years following an injury on a city sleigh riding hill could not invoke a claim that the seven-year statute of repose for injuries caused by defective or unsafe improvements to real property violated the open courts provision. Plaintiffs had an effective alternative remedy against the city as owner in possession which could have been filed within a four-year statute of limitations from the date of injury. The court held that plaintiffs could not now invoke *Berry* to excuse them from their own dilatory conduct in not bringing action within the four-year statute of limitations. *Id.* at 1199. In the present case, under section 35–2–13(b)(3), Mrs. Velarde had a substantially equal alternative remedy if her cause of action arose with Mr. Velarde's right to disability compensation, because by asserting the right to disability compensation, Mrs. Velarde could have preserved her right to death benefits "where death results during a period of continuous total disability from silicosis for which compensation has been paid or awarded," *id.*, even though the three year statute of repose after employment had tolled.

Mrs. Velarde contends that her death benefit right as a dependent heir is independent of Mr. Velarde's disability benefit claim as an employee; that the death benefit right arises only at the death of the occupationally diseased employee; and that she had no cause of action prior to Mr. Velarde's death. She bases this claim on the wording of the statute setting the limitations period for death benefits for silicosis at one year after the cause of action arises:

> A dependent's cause of action shall be deemed to arise when that dependent knew, or in the exercise of reasonable diligence should have known, that the employee's death was the result of exposure to an occupational disease.

Utah Code Ann. § 35–2–48(c) (1988). Mrs. Velarde maintains that she could not possibly have known the cause of Mr. Velarde's death until after his death occurred. Kennecott concedes that Mrs. Velarde has an independent right to death benefits, separate from the right to disability compensation during Mr. Velarde's lifetime, but counters that Mrs. Velarde also had a coextensive right to Mr. Velarde's disability compensation and that in failing to assert this right she relinquished her later claim to death benefits.

Kennecott cites Utah Code Ann. § 35–2–3 (1988) in support of its assertion that the right to disability compensation extends to the spouse. However, this exclusive remedy section has exactly the opposite effect. The section states, in pertinent part, that the right to compensation under the Act shall be the exclusive remedy against the employer and that the liabilities of the employer imposed by the Act "shall be *in place of* any and all other civil liability whatsoever, at common law or otherwise, to such employee or to his *spouse*, widow, children, parents, dependents, next of kin, heirs, personal representatives, guardian or any other person." *Id.* (emphasis added). This section gives Mrs. Velarde no rights as a spouse other than those expressly provided in the Act. Mrs. Velarde asserts that, although she might have had the power, if Mr. Velarde were incapacitated, to file his claim as his agent, this power would not translate into an independent claim of her own for compensation for Mr. Velarde's disability. We agree.

We find nothing in the Act indicating that Mrs. Velarde had a separate right of action prior to Mr. Velarde's death. To the

contrary, the rights of dependents under the Act arise only at the time of death. *See* Utah Code Ann. § 35–2–30 (1988); *see also Martinez v. Industrial Comm'n,* 720 P.2d 416, 417 (Utah 1986) (a worker's dependents' right to death benefits under the Workers' Compensation Act is an original and independent right, separate from the worker's right to benefits for injuries suffered in an industrial accident); *State Indus. Ins. System v. Lodge,* 822 P.2d 664, 665 (Nevada 1991) (construing Nevada statute to hold that spouse's benefits are separate and distinct from those of the injured worker and not derivative from the rights of the deceased worker and thus not extinguished because the worker failed to make a timely claim). We hold that Mrs. Velarde's right to death benefits is a separate and independent right which arose at Mr. Velarde's death, and further that Mrs. Velarde had no coextensive right to Mr. Velarde's disability benefits during his lifetime. We thus conclude that under the first prong of the *Berry* analysis, Mrs. Velarde had no substantially equal alternative remedy to the one barred by the three-year statute of repose. Hence, we may uphold the statute only if it passes the second prong of the *Berry* analysis.

### B. Balancing Analysis

■ Under the *Berry* second prong, the purpose of the three-year statute of repose must be to eliminate a clear social or economic evil. In addition, the statute's exter-

mination of Mrs. Velarde's remedy must not be an arbitrary or unreasonable means for achieving the objective. *Berry,* 717 P.2d at 680. To determine whether there is a clear social or economic evil, we apply a due process type "balancing analysis," which weighs the particular infringement on the article I, section 11 interest against the justifications offered for the restriction. *See id.* at 679–80, 683;[7] *Condemarin v. University Hosp.,* 775 P.2d 348, 367 (Utah 1989) (Zimmerman, J., concurring). "Legislative attempts to abrogate [the special class of protected rights under article I, section 11] should be closely examined by this Court and struck down when the disability they seek to impose on individual rights is too great to be justified by the benefits accomplished or when the legislation is simply an arbitrary and impermissible shifting of collective burdens to individual citizens." *Condemarin,* 775 P.2d at 358.[8]

We must first consider the particular infringement on Mrs. Velarde's article I, section 11 interest in receiving a remedy by due course of law. The strong public interest in compensating employees and their dependents and encouraging safety precautions in the work place is reflected in the well-established practice of construing compensation statutes liberally in favor of recovery. *See Heaton v. Second Injury Fund,* 796 P.2d 676, 679 (Utah 1990). Against these strong public policy concerns supporting Mrs. Velarde's interest in a pro-

---

7. "To a degree, the open courts provision is an extension of the due process clause. Indeed, the open courts provision and the due process clause also have an overlapping function, to some extent, with respect to the abrogation of causes of action." *Berry,* 717 P.2d at 679.

8. Mrs. Velarde suggests that the burden shifts to Kennecott as proponent of the legislation's validity "to demonstrate that its restrictions on those rights are carefully drawn and supported by weighty considerations." *Condemarin,* 775 P.2d at 368 (Zimmerman, J., concurring). Although we find no majority support for this proposition, we believe the logical result of finding that a statute of repose has deprived a person of a right of action before the action arose and that no substantially equal alternative remedy is available, is that the burden shifts to the proponent to demonstrate the statute's constitutionality under the *Berry* second prong. We

further note Justice Stewart's concurring opinion in *Condemarin:* "[T]o presume the constitutionality of a statute when the statute deprives a person of a right established by article I, section 11 of the state constitution is to fail to give any greater weight to a constitutional right than to a nonconstitutional interest, such as a general social or economic interest." *Id.* at 370 (Stewart, J., concurring). Moreover, we note some agreement in *Condemarin* that the open courts provision requires a "higher standard of review," *id.* at 370 (Stewart, J., concurring), also referred to as an "intermediate level" or "realistic review," *id.* at 356, of "an important substantive right," *id.* at 360, requiring "careful scrutiny," *id.* at 366 (Zimmerman, J., concurring), which involves "a real and thoughtful examination of legislative purpose and the relationship between the legislation and that purpose." *Id.* at 356.

tected remedy by due course of law, we weigh Kennecott's claim that the legislation which abrogates them serves a public policy interest. Kennecott makes no claim that the legislative purpose is to remedy a clear social evil. If this were the legislative purpose, Kennecott would have to show either a constitutional state interest or a state purpose to promote the public health, safety, morals, or welfare. *See Berry*, 717 P.2d at 677. Examples of constitutional interests which might justify abrogating rights protected by the open courts provision are the state's eminent domain power to condemn private property or the public's right to enforce criminal laws. *Id.* "Similarly, legal causes of action which provide remedies that protect section 11 interests may, in some cases, have to yield to the power of the Legislature to promote the public health, safety, morals, and welfare." *Id.* We find no such justifications for this legislation.

■ Instead, the thrust of Kennecott's public policy argument seems to be that the legislation remedies some economic evil. Unlike *Berry's* product liability legislation, the legislature has articulated no express purpose for the statute of repose at issue in the present case. Kennecott simply conjectures that the statute's purpose is to ensure that silicosis claims are directly attributable to the employer against whom the claim is made and to protect employers from responding to claims which have aged to the point that defending the causation issue becomes difficult. Assuming that these inferred purposes are accurate, we must still weigh them against Mrs. Velarde's article I, section 11 right to a remedy. We are not persuaded that easing an employer's burden in proving causation is an economic interest that rises to the level of a clear economic evil. Moreover, Kenne-

cott makes no showing that the statute actually achieves the stated legislative purpose of reducing claims in which silicosis is actually caused by other sources.

Kennecott focuses almost exclusively on the differences between this statute and the unconstitutional one-year statute of repose which barred a claim for asbestosis before the claim had accrued in *Wrolstad v. Industrial Comm'n*, 786 P.2d 243 (Utah App.), *cert. denied*, 795 P.2d 1138 (Utah 1990). However, Kennecott's emphasis on the medical distinctions between silicosis and asbestosis neglects the obvious parallel between an asbestosis victim whose claim is barred and a surviving dependent whose claim is barred.[9] Kennecott's distinctions do nothing to support a finding that the present statute of repose on death benefits serves any public policy interest. They appear instead to be an attempt to show that the statute's means are finely tuned to its objective. However, aside from one limited statutory exception,[10] the statute of repose applies to all death benefits when the employee dies over three years after employment, including those expressly barred because the claims were filed one year after the employee "knew, or in the exercise of reasonable diligence should have known, that the occupational disease was *caused by* his employment." Utah Code Ann. § 35–2–48(c) (1988) (emphasis added). This statutory scheme, which includes in its sweep the class of people for whom timing, rather than causation, is a problem, is overbroad in its application and thus unreasonable and arbitrary. While we recognize that a surviving dependent might fail to prove that the occupational disease was the cause of death, we are not persuaded of the need for a statutory scheme that prevents a surviving dependent from making his or her case. Kenne-

---

**9.** We further note that the present Occupational Disease Act, Utah Code Ann. §§ 35–2–101 to 111 (Supp.1991), effective April 19, 1991, eliminates all distinctions among diseases, defining "occupational disease" as follows:

> For purposes of this chapter, a compensable occupational disease is defined as any disease or illness which arises out of and in the course of employment and is medically caused or aggravated by the employment.

Utah Code Ann. § 35–2–107 (Supp.1991).

**10.** Compensation will be paid when death results from silicosis complicated by active tuberculosis, evidenced by clinical findings, if death results within five years from the last day of employment. Utah Code Ann. § 35–2–13(b)(3)(b) (1988).

cott has thus failed to show that there is a clear social or economic evil to be eliminated by this statute of repose, and that the means of achieving the statute's purported economic objectives are not just "an arbitrary and impermissible shifting of collective burdens to individual citizens." *Condemarin,* 775 P.2d at 358.

We conclude that in denying Mrs. Velarde her death benefits action and providing her no alternative remedy, without avoiding a clear social or economic evil, Utah Code Ann. § 35–2–13(b)(3) violates article I, section 11 of the Utah Constitution and is invalid.[11] Because the open courts provision is dispositive, we need not reach the equal protection question.

We reverse the Industrial Commission's decision and remand Mrs. Velarde's claim for a hearing on the merits.

BILLINGS and RUSSON, JJ., concur.

---

**11.** Utah Code Ann. § 35–2–13(b)(3) (1988) is severable from the remainder of the Occupational Disease Act, which continues to be effective without this subsection. *See Wrolstad,* 786 P.2d at 245.